KEN LEWIS, Plaintiff-Appellee, v. KENNETH HAYES, Mayor of the Village of Bradley, *et al.*, Defendants-Appellants.

Third District No. 3—86—0335

Opinion filed March 12, 1987.

Kurnik & Cipolla, of Arlington Heights (William W. Kurnik, of counsel), for appellants.

Michael D. Kramer, of Blanke, Norden, Barmann & Bohlen, P.C., of Kankakee (Christopher W. Bohlen, of counsel), for appellee.

JUSTICE STOUDER delivered the opinion of the court:

Defendants, the village of Bradley and its mayor, Kenneth Hayes, appeal from the judgment of the circuit court of Kankakee County awarding plaintiff, Ken Lewis, damages of $30,333 plus costs and attorney fees for the failure of the village to hire Lewis as a probationary police officer.

The Bradley police department's hiring procedures are governed by a board of police and fire commissioners (the board), which establishes an eligibility list for police officers. The process involves, first, an application for examination and an initial screening of applicants to determine eligibility. Second, applicants are required to pass written, physical, and oral examinations. Once a preliminary successful completion order is established, veteran's preference points are added, and a final eligibility list and rank order is published.

Upon completion of the testing procedure, Lewis occupied the second position on the eligibility list established in January 1982. After the first individual on the list was hired, a vacancy occurred in the department, but Lewis' name was not submitted by the board, allegedly on the basis that Lewis had not established residency in Bradley at the time. The board had enacted a rule that requires all applicants to be residents of the village. As had been done in the past, the residency requirement for taking the examination had been waived for Lewis, who was a former police officer. The practice was to allow former officers to take the examination and to make employment conditional upon taking up residency in the village. Further, prior practice of the board was to allow former officers to accept employment with the village and to give them 90 days to move into the village. At Lewis' oral interview, the board's chairman, Nick Coleveris, informed Lewis that he would have 90 days to move into the village if hired, and Lewis agreed to those terms. This point appears to be in dispute because the board secretary, Elmer Stump, testified that he never heard Coleveris make such a statement. Coleveris had a stroke since the time of the interview and was unable to testify.

When the third person on the list was hired before Lewis, he went to see the mayor. The mayor gave the reason of nonresidency as the reason for the village's not hiring Lewis. At that time, the mayor was allegedly unaware of the previous hiring practices. Lewis was then hired as a part-time police officer, a group not governed by the board, in June 1982. There was no dispute about the fact that over

the last 24 years, the eligibility list had always been followed in rank order or the fact that every other person hired as a full-time police officer, with one previous exception, was a Bradley resident. The eligibility list expired before any other vacancies occurred.

Lewis was removed from another eligibility list in 1984 when a question arose as to one of the answers he submitted on his application form. The question on the form was: "Were you ever discharged or forced to resign because of misconduct or unsatisfactory service or while under investigation?" Lewis checked the box "No" and added the comment "voluntarily resigned." This alleged misrepresentation was asserted in the village's first amended affirmative defense to Lewis' action. Lewis moved to strike the affirmative defense and a hearing was held on the motion. The defendants made an offer of proof at the hearing during which the Bourbonnais police chief testified that in 1981 Lewis was told that he was under investigation for alleged misconduct and was given the option of either voluntarily resigning or having charges filed against him if he decided to remain with the department. The chief also testified regarding the acts of misconduct and the subsequent investigation by the department. The motion of proof was rejected consistent with the court's determination that this part of the affirmative defense was irrelevant to the case. The defendants' motion to reconsider the order of dismissal was denied.

■ The first issue raised by the defendants is that, as a matter of law, Lewis had no basis upon which to ground his section 1983 action. The defendants contend that because dismissal from the position of probationary police officer did not have to be supported by cause, no property right existed in the position. The defendants contend then, that since no property right is involved, there was no deprivation of his substantive due process rights and, therefore, no basis for the section 1983 action. As the defendants correctly point out, municipalities governed by or electing to be governed by division 2.1 of the Illinois Municipal Code (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—1 *et seq.*), may summarily discharge a probationary patrolman without a hearing. (See *Romanik v. Board of Fire and Police Commissioners* (1975), 61 Ill. 2d 422, 338 N.E.2d 397.) In that case, where the employee serves at the will and pleasure of the public employer, the courts will not recognize a constitutionally protected property interest. *Bishop v. Wood* (1976), 426 U.S. 341, 48 L. Ed. 2d 684, 96 S. Ct. 2074.

■ ■ However, where a property interest exists, that interest must be protected by due process safeguards. Property interests are created and their dimensions defined by existing rules or understand-

ings that stem from an independent source such as State law. These rules and understandings secure certain benefits and will support claims of entitlement to those benefits. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701.) In this case, the village of Bradley, by enacting its rules of the commission, has modified the status of a probationary police officer. Section 1 of Rule V states that a probationary employee can be terminated if he is found incompetent or disqualified for the performance of his duties. It then provides that termination can then take place "by and with consent of the Commission after the chief submits written reasons for the termination." The defendants argue that because this language does not contain the word "only," it is just an additional way to discharge a probationary employee. We would only say that to accept the defendants' interpretation of its rules would render it meaningless. If a probationary officer could be terminated either with cause or without, the "with cause" language would have no meaning whatsoever, and we cannot assume that the village would draft meaningless language and insert it into its commission's rules.

 The defendants argue that to accept Lewis' interpretation would be tantamount to this court's stripping the rules of the board of police and fire commissioners act (Ill. Rev. Stat. 1985, ch. 24, par. 10—2.1—1 *et seq.*) of their obvious purpose of providing a probationary period during which the board may terminate an officer's employment without cause. This argument is without merit. The statute provides for guidelines and rules that must be followed. However, a municipality can provide greater protection for its employees if it sees fit to do so by enacting rules and regulations. But once that is done, the municipality, when challenged within the bounds of their own rules, cannot claim the rule to be invalid as providing more protection than that provided by statute. Therefore, we hold that a protectable property interest existed in employment as a probationary police officer in the village of Bradley.

 Our next inquiry is whether the board's action in passing over Lewis for appointment as an officer, on the ground that he had not established residency in Bradley at the time the vacancy occurred, was arbitrary and capricious. The scope of review under the arbitrary-and-capricious standard is narrow, and the court is not to substitute its judgment for that of the agency. Nevertheless, an administrative agency is required to examine relevant facts and articulate a sufficient explanation for its action. (*Sicinski v. Will County Police Department Merit Com.* (1985), 131 Ill. App. 3d 966, 476 N.E.2d 808.) There must be a rational connection between the facts considered and the

decision made.

■ In this case, no such connection existed. The evidence presented demonstrated that: (1) the applicant's residency requirement had been waived by the board, (2) the one police officer hired previously, who was not a resident of Bradley at the time he was hired, was given in excess of 90 days to move into the village once appointed to the position, (3) Lewis had stated he would move into the village if hired, and (4) although disputed, there was some evidence that, at Lewis' oral interview, he was told by the board chairman that he would also have 90 days to move into the village. Although the residency waiver in the one previous case may not be sufficient to establish a pattern, we find that, because the waiver was granted to the only previous non-Bradley resident who was hired as an officer, sufficient evidence existed to demonstrate that the board acted arbitrarily and capriciously in passing over Lewis for employment.

■ Therefore, we hold that because Lewis had a protectable property interest in the employment in Bradley and because the board acted erroneously in passing over Lewis for employment on the basis that he had not established residence at the time of the vacancy, Lewis stated a valid cause of action under 42 U.S.C. section 1983. Further, in reviewing the evidence presented at trial, and considering nothing more, the jury would have been correct in its award to Lewis.

Notwithstanding this preliminary conclusion, we must now consider the defendants' next argument, *i.e.*, whether the alleged misrepresentation as to his prior employment with the Bourbonnais police department constituted a valid defense and whether the trial court erred in striking that part of the affirmative defense. The defendants argue that this evidence should have gone to the jury for consideration because it was relevant and material to the claim and would have placed an upper limit on the damages which Lewis could have recovered.

■ We note at the outset that a law-enforcement officer is in a unique position of public trust and responsibility. Because he occupies such a position, the public has an important interest in expecting an officer to give frank and honest replies to questions relevant to his fitness to hold office. The case law on this subject indicates that disqualification of a candidate for the position of police officer can be supported by proof of bad character, dissolute habits, or immoral or criminal conduct. There is no requirement that there be an actual arrest for the prior conduct; rather the disqualification can be based on the violation of departmental rules or policies. This also includes the situation where the officer may have resigned while under investiga-

tion. See *Davern v. Civil Service Com.* (1970), 47 Ill. 2d 469, 269 N.E.2d 713, *cert. denied* (1971), 403 U.S. 918, 29 L. Ed. 2d 695, 91 S. Ct. 2229; *Del Rivero v. Cahill* (1979), 71 Ill. App. 3d 618, 390 N.E.2d 355.

We are cognizant of the fact that semantic arguments exist on both sides of this issue as to whether a misrepresentation of fact occurred when Lewis answered the question regarding his previous employment. To dwell on those arguments with a lengthy discussion merely clouds the issue. The fact remains that the incidents surrounding Lewis' employment in Bourbonnais did come to light and should have been considered as a defense to the action. It would be illogical to think that Lewis could recover under this cause of action and yet still be deemed to be unqualified as a candidate for the position of police officer. The evidence relating to this defense should have gone to the jury for its consideration.

The final issue we will address is whether the jury was properly instructed regarding the application of the doctrine of equitable estoppel. The instruction which the court gave to the jury stated:

"A municipality may be estopped from enforcing residency requirements if the municipality takes some affirmative action sufficient to cause another to believe that the municipality is not enforcing its residency requirement and to act to his detriment on that belief."

In light of our earlier determination that the board acted arbitrarily and capriciously in its decision to pass over Lewis on the basis of residency, we also hold that the court properly instructed the jury on the issue of estoppel. There was sufficient evidence before the jury that it could have found that Lewis relied on the earlier waiver of the residency requirement, that the chairman of the board made statements to Lewis which indicated that he would be given 90 days to establish residency if he should be hired, and that he acted to his detriment by not seeking to establish residency at some earlier time.

For the foregoing reasons, the judgment of the circuit court of Kankakee County is reversed and the cause is remanded with instructions that the defendants be given leave to refile their affirmative defense asserting the alleged misrepresentation and underlying misconduct as a defense to the action.

Reversed and remanded.

HEIPLE and WOMBACHER, JJ., concur.