PARK COUNTY, Wyoming, Chris
J. White, and Robert Mayor,
Appellants (Defendants),

v.

Thomas Russell COONEY and Lora
John Cooney, Appellees
(Plaintiffs).

No. 91–182.

Supreme Court of Wyoming.

Dec. 2, 1992.

Edward G. Luhm of Scott, Shelledy, and Luhm, Worland, for appellant Robert Mayor.

L.B. Cozzens of Crowley, Haughey, Hanson, Toole & Dietrich, Billings, Mont., for appellees.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

CARDINE, Justice.

The issue in this case is whether a probation officer who knowingly prepares a perjured petition for revocation of probation is entitled to immunity in an action under 42 U.S.C. § 1983 arising from the probationer's subsequent arrest and incarceration. The probation officer, Robert Mayor (Mayor), appeals the trial court's order denying his motion to dismiss appellees' amended § 1983 complaint against him.

We affirm.

Appellant states the issue as follows:

Whether the District Court erred by holding that, in January, 1986, a reasonable Wyoming Probation and Parole Agent would have understood that the preparation of a perjured probation revocation petition, and the forwarding of said petition to a prosecuting attorney who requested it, was unlawful in light of clearly established law?

The facts underlying this case are set out in *Cooney v. Park County*, 792 P.2d 1287 (Wyo.1990) (*Cooney I*). For the convenience of the reader, we reiterate from that opinion the facts relevant to this appeal:

In 1985, Thomas Cooney pled guilty to writing bad checks in Park County, Wyoming. The district court accepted his guilty plea and sentenced him to five years of supervised probation, which required him to stay in regular contact with officers of the Wyoming Department of Probation and Parole. When sentenced, Mr. Cooney lived in Riverton, Wyoming, where his parole officer was Cindy Johnson. In September 1985, Mr. Cooney requested permission from the Department to move with his wife and child to Baroil because of a change in his job. Johnson granted Mr. Cooney permission to move and told him that he would be contacted by a Department officer in Rawlins for continued supervision under the terms of his sentence.

The Cooneys moved to Baroil in October 1985, and Johnson forwarded Thomas Cooney's file to Tracy Reinke, a Department officer in Rawlins. Unknown to the Cooneys, however, Johnson erroneously advised Reinke that Thomas Cooney and his family were now living in La Barge, Wyoming, instead of Baroil. Because of this erroneous advice, Reinke returned the Cooney file to Johnson in Riverton and instructed Johnson to forward it to the Department office in Evanston, Wyoming, the Department office with jurisdiction over probationers living in La Barge. On October 21, 1985, Johnson mailed the Cooney file to the Department office in Evanston where it was assigned to appellee Robert Mayor. After receiving the file, Mayor made unsuccessful attempts to locate Mr. Cooney in La Barge because the Cooneys were in Baroil.

In the meantime, Mr. Cooney, still unaware of the Department's foul-ups, contacted Johnson several times by telephone inquiring about the contact he expected to receive from a Department officer in Rawlins. Based on those calls, Johnson filed reports verifying Mr. Cooney's compliance with the terms of his probation in October and November of 1985. During December 1985, Mr. Cooney telephoned the Department office in Rawlins to contact Reinke about his probation.

In mid-January, 1986, Mayor contacted Johnson to inform her that he could not locate Mr. Cooney in his area. Unexplainably, Johnson told Mayor that Mr. Cooney had relocated to La Barge, Wyoming, in October 1985, and that she had not heard from him since his move. This incorrect information prompted Mayor on January 24, 1986, to call appellee Chris

* Chief Justice at time of oral argument.

White, who was then deputy county attorney for Park County, Wyoming; Mayor told White that Mr. Cooney had not been in contact with his probation officers as required by the terms of his sentence and that he had moved from Riverton without Department permission. White asked Mayor to prepare a petition revoking Mr. Cooney's probation.

On January 29, 1986, Johnson telephoned Mayor and told him that the Cooneys lived in Baroil, had permission from the Department to be there, and that Mr. Cooney had been in contact with her office during October and November 1985. Mayor then telephoned White and relayed those facts to him. Despite this information, White reiterated his request that Mayor draft the petition to revoke Mr. Cooney's probation. Mayor followed White's instructions and prepared a document entitled "Petition for Revocation of Probation and Bench Warrant" dated January 29, 1986. In that document, and despite his contrary knowledge, Mayor swore under oath that Mr. Cooney changed his address without the Department's permission and failed to maintain contact with the Department after he moved. Mayor then forwarded the petition to White who presented it to the district court. Based on the petition, the district court issued a bench warrant for Mr. Cooney's arrest on February 7, 1986.

\* \* \* \* \* \*

\* \* \* On March 15, 1986, a highway patrol officer stopped Mr. Cooney, his wife, and child and arrested him pursuant to the bench warrant issued because of the information provided to the district court by Mayor and White. \* \* \*

Mr. Cooney remained in the Park County jail until April 21, 1986 \* \* \*.

*Cooney,* 792 P.2d at 1288–89.

The Cooneys sued Park County, the State of Wyoming, the Wyoming Department of Probation and Parole, White and Mayor for claims arising out of Mr. Cooney's wrongful detention. The complaint alleged grounds for recovery under the Wyoming Governmental Claims Act and under 42 U.S.C. § 1983. Upon W.R.C.P.

12(b)(6) motions by the defendants, the trial court dismissed all claims against White and Park County, and the Wyoming Governmental Claims Act claims against the State of Wyoming, the Department of Probation and Parole, and Mayor. It then issued an order certifying the case for appeal under W.R.C.P. 54(b). The Cooneys took appeal from the dismissals. We initially dismissed the appeal because of the trial court's failure to explain its reasons for granting Rule 54(b) certification. The trial court then amended its order, and Cooneys renewed their appeal.

In *Cooney I,* we affirmed the trial court's orders of dismissal. The Cooneys then filed a petition for certiorari to the United States Supreme Court, which was granted *sub nom., Cooney v. White,* —— U.S. ——, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991). The Supreme Court vacated the judgment in *Cooney I* and remanded to us for further consideration in light of *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). On June 17, 1991, we ordered rebriefing and rehearing on the matter.

Meanwhile, on September 7, 1989, Mayor, the State of Wyoming, and the Department of Probation and Parole had filed a motion asking the trial court to reconsider its failure to previously dismiss the § 1983 counts against them. This motion cited the United States Supreme Court's holding in *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that states and state officials acting in their official capacity cannot be sued under § 1983. In response, the Cooneys filed a motion to amend their complaint to assert a claim against Mayor individually, and also to add a claim for "constitutional tort" against him.

On August 7, 1990, by stipulation of the parties, the trial court dismissed with prejudice the § 1983 complaints against the State and the probation department. Subsequently, the trial court dismissed the § 1983 action against Mayor in his official capacity. In the same order, it also granted the Cooneys' motion to amend the complaint to assert a § 1983 claim against

Mayor personally, but denied the Cooneys' motion to add an allegation of constitutional tort. The Cooneys filed an amended complaint on April 1, 1991, to which Mayor responded.

Mayor filed a motion to compel discovery against the Cooneys. His motion was based on his need to gather information to assert a defense of qualified immunity. He also filed for a protective order to prevent the Cooneys from conducting further discovery against him until the issue of qualified immunity had been resolved. The trial court announced its decision to treat these two motions as a motion to dismiss on the basis of qualified immunity under W.R.C.P. 12(b)(6). Both parties filed briefs on whether the case should be dismissed. The trial court entered an order denying the motion to dismiss from which Mayor took timely appeal.

*Appealability of Order*

■ A threshold question to be considered is whether Mayor's appeal is properly before the court at this time. Mayor is appealing the denial of his W.R.C.P. 12(b)(6) motion to dismiss based on qualified immunity. Generally, an order denying a motion to dismiss is not a final, appealable order from which appeal may be taken. Wyoming Rule of Appellate Procedure 1.05 defines a "final order" as

(1) an order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment; (2) an order affecting a substantial right, made in a special proceeding, or upon a summary application in an action, after judgment; (3) an order, including a conditional order, granting a new trial on the grounds stated in Rule 59(a)(4) and (5), W.R.C.P. * * *.

We have stated that a final order from which appeal may be taken is one which "determines the merits of the controversy and leaves nothing for future consideration." *Public Serv. Comm'n v. Lower Valley Power and Light, Inc.,* 608 P.2d 660, 661 (Wyo.1980).

The United States Supreme Court has held, however, that a federal district court's denial of a motion to dismiss based on qualified immunity was "an appealable 'final decision' * * * notwithstanding the absence of a final judgment." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). The Court reasoned that qualified immunity provides "an *immunity from suit* rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815 (emphasis in original). In other words, unless the order denying dismissal can be reviewed before trial, it can never be effectively reviewed at all, because the defendant will have already suffered an irreparable loss to his immunity from suit. The *Mitchell* Court also noted that an order denying dismissal on the basis of qualified immunity fits the collateral-order exception established in *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). The Court in *Cohen* noted that there is a "small class [of orders appealed from] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Mitchell,* 472 U.S. at 524, 105 S.Ct. at 2814, *quoting Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225.

■ State courts are divided on whether interlocutory appeal is available under these circumstances. We believe the state decisions which allow appeal, for the reasons detailed in *Mitchell* as cited above, are better reasoned; and we therefore hold that an order denying dismissal of a claim based on qualified immunity is an order appealable to this court. *See Henke v. Superior Court,* 161 Ariz. 96, 775 P.2d 1160, 1162–64 (1989).

*Standard of Review*

■ When reviewing the trial court's disposition of a motion to dismiss under W.R.C.P. 12(b)(6), we accept the facts alleged in the complaint as true and view them more favorably toward the party op-

posing the motion below. *Mummery v. Polk*, 770 P.2d 241, 243 (Wyo.1989). Dismissal under Rule 12(b)(6) should be granted sparingly by the trial courts, and is not favored on appeal. *Id.*

### Absolute or Qualified Immunity

■ Appellant concedes that his actions are, at most, cloaked with qualified rather than absolute immunity. This means the "type of immunity" question is not presented for our review. We find it helpful, however, to discuss the basis for considering appellant's actions for only qualified immunity.

In *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the United States Supreme Court considered the immunity to be accorded a state prosecuting attorney from a suit for damages under § 1983. The Court concluded that the prosecutor was absolutely immune from a suit based on his initiation and pursuit of a criminal prosecution. Its holding was based on a functional approach which grants absolute immunity where the prosecutor's actions "were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." 424 U.S. at 430, 96 S.Ct. at 995. The Court took no position on whether the prosecutor would retain his absolute immunity when exercising administrative or investigative functions.

Two years later, in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court considered the scope of personal immunity of Department of Agriculture officials who had allegedly instituted a retaliatory investigation and administrative proceeding against the plaintiff. It held that the executives were entitled only to qualified immunity.

In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court distinguished absolute from qualified immunity as follows:

Our decisions have recognized immunity defenses of two kinds. For officials whose special functions or constitutional status requires complete protection from suit, we have recognized the defense of "absolute immunity." The absolute immunity of legislators, in their legislative functions, and of judges, in their judicial functions, now is well settled. Our decisions also have extended absolute immunity to certain officials of the Executive Branch. These include prosecutors and similar officials, executive officers engaged in adjudicative functions, and the President of the United States.

For executive officers in general, however, our cases make plain that qualified immunity represents the norm.

*Harlow*, 457 U.S. at 807, 102 S.Ct. at 2732 (citations omitted). The Court reiterated its adherence to the functional approach to immunity law, noting that although the judicial, prosecutorial, and legislative functions require absolute immunity, its protections have been extended no further than its justification would warrant. 457 U.S. at 810–11, 102 S.Ct. at 2734.

Most recently, in *Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Supreme Court clarified the functional approach, as applied to a prosecutor's misconduct. Addressing the question left open in *Imbler*, the Court held that the prosecutor had absolute immunity for his conduct in appearing at the probable cause hearing, a function "intimately associated with the judicial phase of a criminal process," but had only qualified immunity for his act of giving advice to the police, a function not "connected with the prosecutor's role in judicial proceedings." *Burns*, —— U.S. at ——, 111 S.Ct. at 1943.

It must be admitted that several federal circuits have extended absolute immunity to federal and state probation officers for their conduct in preparing presentence reports for use by the trial court. *See e.g.*, *Dorman v. Higgins*, 821 F.2d 133 (2nd Cir.1987); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir.1979); *Freeze v. Griffith*, 849 F.2d 172 (5th Cir.1988); *Demoran v. Witt*, 781 F.2d 155 (9th Cir.1985); *Tripati v. U.S.I.N.S.*, 784 F.2d 345 (10th Cir.1986), *cert. denied* 484 U.S. 1028, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988) (preparation of pretrial bond report and presentence report);

*Hughes v. Chesser,* 731 F.2d 1489 (11th Cir.1984) (state probation officer); *Turner v. Barry,* 856 F.2d 1539 (D.C.Cir.1988). However, we must be wary of extending the rule in these cases beyond their facts. Absolute, quasi-judicial immunity was given because the preparation of a presentence report is "an integral part of the sentencing process, and in preparing the report the probation officer acts at the direction of the court." *Spaulding,* 599 F.2d at 729.

Where a probation officer exercises the discretionary, executive function of seeking probation revocation, the fifth circuit has held, applying the functional analysis, that no such connection requiring absolute immunity exists. In *Galvan v. Garmon,* 710 F.2d 214 (5th Cir.1983), *cert. denied* 466 U.S. 949, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984), the fifth circuit held that when a probation officer erroneously prepared a motion for revocation of appellant's probation, she was only entitled to qualified immunity. The court distinguished its earlier case of *Spaulding v. Nielsen, supra:*

> We find *Spaulding* not controlling in the case at hand. Whereas in *Spaulding* the probation officer was acting at the direction of the court during the presentence report process, in the immediate case the probation officer acted at her own initiative and at a different phase of the criminal process less intimately associated with the judiciary.

*Galvan,* at 215. *See also Griffin v. Leonard,* 821 F.2d 1124 (5th Cir.1987) (holding under facts presented that probation officer was entitled to "at least" qualified immunity). We note also third circuit decisions, applying the functional approach, which have refused absolute immunity to officers who allegedly acted wrongfully to revoke a plaintiff's parole status. *See Harper v. Jeffries,* 808 F.2d 281 (3rd Cir. 1986); *Wilson v. Rackmill,* 878 F.2d 772 (3rd Cir.1989).

Even if Mayor did not concede his entitlement to only qualified immunity, the proper, functional analysis of Mayor's alleged conduct would lead us to refuse him absolute immunity. The exercise of his discretionary duties at issue in this case was not so "intimately connected with the judicial process" to create absolute immunity. If anything, he might receive qualified immunity.

*Qualified Immunity—Application*

Appellant claims that he is shielded from liability for his actions in this case because of the qualified immunity enjoyed by a probation officer who performs the discretionary function of preparing a petition to revoke probation. In *Harlow v. Fitzgerald,* 457 U.S. at 817–18, 102 S.Ct. at 2738, the United States Supreme Court set forth the standard for evaluating a claim of qualified immunity:

> [W]e conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages *insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.* [emphasis added]

In *Anderson v. Creighton,* 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987), the Court took up the question of what constitutes a "clearly established legal rule" for purposes of qualified immunity:

> The operation of this standard, however, depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no rela-

tionship to the "objective legal reasonableness" that is the touchstone of *Harlow*. Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. * * * It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: *The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.* This is not to say that official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. [emphasis added and citations omitted]

■■■ The question, then, under *Harlow* and *Anderson,* is whether a reasonable probation agent, in January 1986, would have known that he was violating a probationer's clearly established right by preparing a perjured petition for revocation of probation. A clearly established right is one recognized by either the highest state court in the state where the case arose, a United States Court of Appeals, or the United States Supreme Court. *Robinson v. Bibb,* 840 F.2d 349, 351 (6th Cir.1988). To this list, we might add those rights expressly provided for by controlling statute or administrative regulation. Moreover, the right need not have been previously recognized in the exact circumstances of the given case; a reasonable official is required to "relate established law to analogous factual settings." *Garcia by Garcia v. Miera,* 817 F.2d 650, 657 (10th Cir. 1987), *cert. denied* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988) *quoting People of Three Mile Island v. Nuclear Regulatory Comm'rs,* 747 F.2d 139, 144 (3rd Cir. 1984).

■■■ A reasonable probation agent would certainly have known that perjury was illegal. Wyoming Statute 6–5–301(a), which was in effect at the time Mayor allegedly prepared the perjured petition, reads as follows:

A person commits perjury if, while under a lawfully administered oath or affirmation, he knowingly testifies falsely or makes a false affidavit, certificate, declaration, deposition or statement, in a judicial, legislative or administrative proceeding in which an oath or affirmation may be required by law, touching a matter material to a point in question.

The question is whether such unlawfulness comprises an violation of the probationer's constitutional rights. The trial court found numerous violations of both plaintiffs' rights. For our purposes, we need consider only Mr. Cooney's right to due process in connection with the use of the perjured petition, without denying the validity of the other reasons provided by the trial court.

"The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano,* 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985), *reh. denied* 473 U.S. 921, 105 S.Ct. 3548, 87 L.Ed.2d 671 (1985), *citing Bearden v. Georgia,* 461 U.S. 660, 666, n. 7, 103 S.Ct. 2064, 2069, n. 7, 76 L.Ed.2d 221 (1983). Mayor should have been aware of a plethora of pre–1985 federal cases, including a Tenth Circuit decision, which held or stated that the knowing use of perjured testimony by the state in a criminal prosecution violates the defendant's right to due process. *See e.g., Williams v. Griswald,* 743 F.2d 1533, 1541 (11th Cir.1984); *United States v. Jones,* 730 F.2d 593, 597 (10th Cir.1984); *United States v. Mills,* 704 F.2d 1553, 1565 (11th Cir.1983), *cert. denied* 467 U.S. 1243, 104 S.Ct. 3517, 82 L.Ed.2d 825 (1984); *United States v. West,* 670 F.2d 675, 688 (7th Cir.1982), *cert. denied sub aliter nom.* 457 U.S. 1124, 1139, 102 S.Ct. 2944, 2972, 73 L.Ed.2d 1340 (1982).

Appellant argues that the facts of these federal cases cannot be analogized to the facts of Cooney's case. He attempts to

distinguish the federal cases by noting that they refer to a prosecutor's use of perjured testimony at trial rather than a probation officer's preparation of a perjured petition for revocation. We are not persuaded by appellant's arguments. As the trial court very aptly stated:

> [T]he use of perjured evidence in a criminal trial is not the sole evil of such evidence. It corrupts not just the trial, but the entire criminal justice system. To assert that it is only during the trial that perjured evidence may not be used is wholly baseless. It is beyond the pale to believe that a reasonable probation officer would consider the use of perjured evidence in an affidavit for revocation of parole to be anything other than wrongful.

In *Edwards v. State,* 577 P.2d 1380, 1384 (Wyo.1978), we said that the perjury statute "keep[s] the process of justice free from the contamination of false testimony. It is for the wrong done to the judicial system and the administration of justice that punishment is provided." Public policy thus favors a remedy in damages to redress constitutional violations created by the use of perjured testimony at *all* stages of a criminal or probation revocation proceeding.

Nor are we persuaded by appellant's argument that the impact of perjured testimony in a revocation petition is less serious than at a criminal trial because the subsequent revocation hearing provides "procedural safeguards" against improper revocation. This argument ignores the fact that at issue here is the time Mr. Cooney spent in jail *prior* to the revocation hearing. Surely counsel cannot mean to suggest that because a person has been once sentenced to probation, subsequent wrongful incarceration for thirty-eight days is of no constitutional significance! We must reject any such cavalier diminishment of the scope and force of the due process guarantee. *See Cooney I,* 792 P.2d at 1308–09 (Urbigkit, J., dissenting.)

We hold that a reasonable probation officer would have known that the perjury allegedly committed here implicated the probationer's right to substantive due process under the United States and Wyoming Constitutions. We affirm the trial court's holding that appellant Mayor is not entitled to dismissal of Cooneys' claims against him on the basis of qualified immunity, and remand this case to the trial court for further proceedings.