Linda M. ABELL, Appellant (Plaintiff),

v.

Roger W. DEWEY and the State of Wyoming, Appellee (Defendant).

No. 92–41.

Supreme Court of Wyoming.

Feb. 16, 1993.

Rehearing Granted March 16, 1993.

Nicholas Vassallo and Harold F. Buck of Buck Law Offices, Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., John W. Renneisen, Deputy Atty. Gen., Josephine T. Porter, Sr. Asst. Atty. Gen., Cheyenne, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

GOLDEN, Justice.

Linda Abell appeals the district court's grant of summary judgment for appellee State of Wyoming in a case involving her termination as a probationary employee. We reverse and remand for trial on the question whether reasonable cause existed for termination and whether appellee Roger Dewey's actions violated appellant's rights under 42 U.S.C. § 1983.

## ISSUES

Appellant presents the following issues on appeal:

A. Did Linda Abell have an implied contract of employment under the state personnel rules which required "cause" for her termination?

B. Did Linda Abell have a property interest in her employment, protected by 42 U.S.C. Section 1983, which entitled her to due process of law?

C. Were Linda Abell's due process rights violated?

D. Did the State of Wyoming breach its contract of employment with Linda Abell by terminating her without sufficient cause?

The State of Wyoming argues the issues in the following manner:

I. Appellant has no constitutionally protected property interest in continued employment and is thus not entitled to the procedural protection of due process.

II. Appellee Dewey is entitled to qualified immunity for any actions taken in his individual capacity.

III. Appellee Dewey did not violate any rights appellant may have in pre-termination due process.

IV. The district court correctly granted summary judgment on the breach of contract claim as there are no admissible, material facts that dispute the district court's decision that appellant's conviction provided reasonable cause for her termination.

## FACTS

Appellant Linda Abell was employed from October 1976 to May 1984 by Natural Gas Processing in Worland as an accountant responsible for all financial records. On October 25, 1984, the district court of Washakie County found Abell guilty of the crime of felony larceny in violation of Wyo. Stat. § 6–3–402(a) (1983) for taking checks worth $193,737.52 from Natural Gas Processing over a five-year period. Abell pled nolo contendere to the charges and was placed on probation for five years.

Abell applied for the position of Natural Resources Production Principal Auditor in the Minerals Audit Division of the Department of Audit for the State of Wyoming on June 20, 1989. The state employment application form specifically asked the applicant to answer yes or no to question # 21: "Have you ever been convicted of an offense in a court of law?" In filling out the

* Chief Justice at time of oral argument; retired January 1, 1993.

application form, appellant consulted with her counsel as to the appropriate response to this question. Abell testified that her attorney said the answer to the question was no; as that did not make sense to her, she left the answer blank.

In an employment interview with John F. McGrath, Audit Manager, appellant stated that she had left her position with Natural Gas Processing because of "two very personal and painful lawsuits with my employer" and that a civil suit had been settled out of court. Abell did not discuss the criminal law suit with McGrath.

Appellant was sent a letter of employment from McGrath on July 10, 1989, and began working for the State of Wyoming on August 1, 1989. Appellant later informed the then Acting Director of Audit, Stan Hunt, that criminal charges had been filed against her by her former employer, and that she was on probation for embezzlement and had pled nolo contendere to the charge. Appellant also stated that she was limited in what she could discuss concerning the criminal charges because of the civil suit that had been filed. Hunt requested that appellant obtain a letter from Probation and Parole about the incident, which Hunt then reviewed and placed in appellant's personnel file. Appellant stated that Hunt requested the letter so if a question ever came up concerning this issue he could say "I [am] aware of it and it is not a problem."

Roger W. Dewey became Director of the Department of Audit on October 15, 1989, a short time after Abell was hired. Dewey stated that by the second week of his employment he was aware of Abell's criminal involvement from her application form containing the unanswered question and a letter in her file from Probation and Parole. Hunt informed Dewey that he did not have a problem with Abell's continuing employment.

On January 8, 1990, at a meeting with Carol Petera, Dewey's personnel manager from the Department of Audit, and Robert Ortega, Director of Probation and Parole, Dewey learned that Abell was a convicted felon. On January 10, Dewey met with Abell, informed her that her situation was becoming a problem and asked for her resignation. Abell did not resign, and Dewey sent her a letter of termination on January 16, 1990, dismissing her as a probationary employee. Dewey noted his reasons for termination as "circumstances involved in your criminal case" and that:

> There is reasonable cause to believe that, as a professional person auditing oil and gas companies, your previous record will have an adverse effect on the credibility of the audits performed by this office, and that your continued employment is detrimental to the operation of the agency.

Abell requested a dismissal hearing from the Department of Administration and Information (DAI), formerly known as the Department of Administration and Fiscal Control. On February 6, 1990, DAI denied the hearing request because of her probationary status as an employee at the time of her termination for reasonable cause. In his letter to Abell denying the request, Mike Miller, Personnel Administrator of that department, cited Chapter XI, Section 3(c)(ii) of the State of Wyoming Personnel Rules. Chapter XI, Section 1(a) lists reasons for discipline of an employee.

Dewey admits that Abell's work was good and that "[t]here's never been any question about her ability or the quality of her work." Dewey also stated that "the real issue is whether the person's offense and conviction is going to impair in the State's view or anybody else's view the credibility of the work produced by the person. That's the issue." Dewey stated that even a felony would not be a factor unless it were work related and commented that: "Linda wasn't terminated because of her performance. Linda was terminated because she is a convicted felon."

Abell filed suit on January 14, 1991, claiming breach of contract by the State of Wyoming, violation of due process rights under 42 U.S.C. § 1983 against Roger Dewey for refusing to allow her to present her side of the story prior to termination, and violation of due process rights by the State of Wyoming for failure of the state person-

nel rules to require a pre-termination hearing for probationary employees. Appellees answered the complaint on February 6, 1991, and filed a motion for summary judgment on July 26, 1991. Abell filed a motion for partial summary judgment on July 29, 1991. Appellant sought to add Mike Miller as a defendant by motion on August 27, 1991, which was not ruled upon by the court. On January 14, 1992, the district court entered an order granting summary judgment for appellees and denying appellant's motion for partial summary judgment. Abell now appeals this order.

## STANDARD OF REVIEW

■ Once again we repeat our standard of review for summary judgment:

When reviewing the propriety of a summary judgment, this court examines the record from the vantage point most favorable to the party opposing summary judgment to determine whether there exists a genuine issue of material fact to preclude disposition of the case as a matter of law. A genuine issue of material fact exists when a disputed fact, if proved, would have the effect of establishing or refuting an essential element to the cause of action or defense asserted by the parties. If upon such review no genuine issue of material fact is found to exist, we will uphold a summary judgment under any legal theory properly supported by the record.

*Ulrich v. United Services Auto. Ass'n,* 839 P.2d 942, 945 (Wyo.1992) (quoting *Equality Bank of Evansville, Wyoming v. Suomi,* 836 P.2d 325, 328 (Wyo.1992)).

## DISCUSSION

1. *Reasonable cause for discharge*

■ In deciding this case, we find a framework to guide our analysis in *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494, (1985). We must first determine whether appellant had "a property right in continued employment." *Loudermill,* 470 U.S. at 538, 105

S.Ct. at 1491, 84 L.Ed.2d at 501. If a reasonable expectation of continued employment cannot be shown, then there is no "property interest under state law or otherwise." *Leonard v. Converse County Sch. Dist. No. 2,* 788 P.2d 1119, 1121 (Wyo.1990) (quoting *Roberts v. Lincoln County Sch. Dist. No. 1,* 676 P.2d 577, 579 (Wyo.1984)). If a property right is found to exist, appellant may not be deprived of that right without due process of law.[1] *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491, 84 L.Ed.2d at 501; *Town of Upton v. Whisler,* 824 P.2d 545, 549 (Wyo.1992).

■ As instructed by *Loudermill,* we look not to the Constitution to define the existence of a property right, but to "existing rules or understandings that stem from an independent source such as state law" to determine its creation and dimensions. *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491, 84 L.Ed.2d at 501 (quoting *Bd. of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972)). With this guideline in mind, we examine the rules before us to determine whether appellant was conferred such a right. We begin by noting rules that have been interpreted as providing a property right.

An Indiana state statute that did not permit a commission to change a probationary firefighter's status unless "his 'conduct or capacity' was found 'not to be satisfactory'" was held to impose a "substantive standard" and confer upon the probationer a reasonable expectation that his status would not be altered. *Marvin v. King,* 734 F.Supp. 346, 354 (S.D.Ind.1990). That court stated:

In order to give rise to a constitutionally-protected property interest, a statute or ordinance must go beyond mere procedural guarantees to provide some substantive criteria limiting the state's discretion—as can be found, for example, in a requirement that employees be fired only "for cause."

*Marvin,* 734 F.Supp. at 350 (quoting *Cain v. Larson,* 879 F.2d 1424, 1426 (7th Cir.

---

**1.** Because appellant seeks only damages, not reinstatement or a post-termination hearing, we

acknowledge only appellant's possible rights in this area and do not fully address this issue.

1989), *cert. denied,* 493 U.S. 992; 110 S.Ct. 540, 107 L.Ed.2d 537).

In *Lewis v. Hayes,* 152 Ill.App.3d 1020, 505 N.E.2d 408, 106 Ill.Dec. 102, (1987), the plaintiff brought a § 1983 action against the Village of Bradley for the failure to hire plaintiff, a probationary police officer, as a full-fledged police officer once he qualified for the eligibility hiring list. Under rules enacted by the Village, a probationary employee could be terminated if "he is found incompetent or disqualified for the performance of his duties," following the submission of written reasons for the termination by the police chief. The court viewed these provisions as a "for cause requirement" that once established must be followed. *Lewis,* 106 Ill.Dec. at 105, 505 N.E.2d at 411. In essence, the Village, by enacting these rules, had created a "protectable property interest" in employment as a probationary police officer. *Lewis,* 106 Ill.Dec. at 105, 505 N.E.2d at 411.

Our considerations in the instant case affect the interpretation of the state personnel policies and are facilitated by our discussion in *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702 (Wyo.1985). In *Mobil Coal,* we considered whether an employee handbook outlining infractions which would subject the employee to discipline as well as a procedure for progressive discipline could alter an at-will employment arrangement. In our review, we stated, "Not only does the tenor of the foregoing reflect the necessity for the existence of cause for discharge, but it specifically requires such." *Mobil Coal,* 704 P.2d at 706. We found that the "handbook's provisions change the appellant's unfettered right to discharge appellee at any time and without cause." *Mobil Coal,* 704 P.2d at 707.

In another case involving interpretation of an employee handbook, we stated:

> The mere existence of a handbook or employer's manual will not

"make employment other than at will in all instances. Each case must be considered on its own merits. Some handbooks or manuals may not contain provisions which negate the employment at will. Some handbooks or manuals may be ambiguous or may not have apparent meaning, making the determination of their effect on at will employment a question of fact. Normally, the construction and interpretation of a contract is for the court as a matter of law."

*Leithead v. Am. Colloid Co.,* 721 P.2d 1059, 1063 (Wyo.1986) (quoting *Mobil Coal,* 704 P.2d at 707). In that case, we found that a handbook listing such misconduct as absenteeism and lateness in arriving for work to contain terms that were clear and unambiguous and that "[b]y listing misconduct that could result in discharge, the handbooks imply that cause is required." *Leithead,* 721 P.2d at 1063. "[B]oth the specific terms and the general tenor of the handbooks gave appellant an enforceable right to be discharged only for cause." *Leithead,* 721 P.2d at 1063.

In the instant case, a specific limitation on the state's discretion to dismiss probationary employees is contained in the state's personnel rules:

> (ii) Dismissal of Probationary and Other Non–Permanent Employees. An agency head may dismiss an employee having other than permanent status, without right of appeal, *for reasonable cause* upon providing written notification to the employee specifying:
>
> (A) The reason(s) for the dismissal; and
>
> (B) The effective date of the dismissal.

State of Wyoming Personnel Rules, Ch. XI, Section 3(c)(ii) (emphasis added). We hold this to be "precisely the type of limit on discretion that provides the basis for a property interest." [2] *Marvin,* 734 F.Supp. at 354.

---

2. At this juncture, we note that by acknowledging the existence of a property interest, we acknowledge also the due process rights that attach. As stated by the *Loudermill* Court:

> While the legislature may elect not to confer a property interest in [public] employment, it

may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards.

*Loudermill,* 470 U.S. at 541, 105 S.Ct. at 1493, 84 L.Ed.2d at 499 (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15,

We consider the State of Wyoming Personnel Rules to be the equivalent of an employee handbook or manual. As in *Leithead,* we now ask whether the terms concerning discharge of a probationary employee are clear and unambiguous. We find that the state has specifically declared in Ch. XI, Section 3(c)(ii) that a probationary employee may be discharged only for "reasonable cause." The rules further list types of misconduct that constitute "for cause" reasons. That section states:

(a) An agency head may discipline an employee for cause including, but not limited to, the following reasons:

(i) Absenteeism;

(ii) Incapacity to perform assigned duties;

(iii) Assault;

(iv) Carelessness;

(v) Damaging State property;

(vi) Dishonesty;

(vii) Insubordination;

(viii) Misconduct;

(ix) Refusal to work;

(x) Sexual harassment;

(xi) Theft;

(xii) Unsatisfactory work performance;

(xiii) Violation of agency rules or policy;

and

(xiv) Violation of the State Personnel Rules.

Ch. XI, Section 1(a).

We find the terms given in Sections 1(a) and 3(c)(ii) of Chapter XI to be clear and unambiguous and, as in *Leithead,* "gave appellant an enforceable right to be discharged only for cause." *Leithead,* 721 P.2d at 1063.

We now ask, as in *Mobil Coal,* whether the state complied with the provisions of its personnel rules. *Mobil Coal,* 704 P.2d at 707. Dewey stated that Abell's work was good and that "[t]here's never been any question about her ability or the quality of her work." Dewey made clear the reason he terminated Abell when he stated: "Linda wasn't terminated because of her per-

formance. Linda was terminated because she is a convicted felon."

■ We note that a felony conviction is not among the list of non-exclusive reasons for discipline given in the state personnel rules. We conclude that it remains a question for the jury, under the facts of this case, recognizing both the quality of appellant's work and that she was continued in employment after the conviction was made known, whether appellant's prior conviction is reasonable cause for termination.

2. *42 U.S.C. § 1983 action against Dewey.*

Appellant claims that Dewey, acting under color of state law, terminated her in violation of state personnel rules and deprived her of property without due process of law by refusing her an opportunity to present her side of the story and meaningfully oppose the evidence against her prior to termination. The trial court granted Dewey summary judgment on this claim.

On appeal, Dewey claims to have qualified immunity from suit under 42 U.S.C. § 1983 for his actions. "Government officials performing discretionary functions may be shielded from liability for civil damages in a § 1983 action by the doctrine of qualified immunity." *Breault v. Chairman of Bd. of Fire Comm'rs,* 513 N.E.2d 1277, 1283 (1987). "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald,* 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396, 408 (1982) (citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

In discussing the parameters of qualified immunity, the Supreme Court has said:

One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.

40–41 (1974)). As previously stated, we do no

more than acknowledge these rights.

*Siegert v. Gilley*, 500 U.S. ———————, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277, 287 (1991).

■■■■ Essentially, qualified immunity confers the entitlement to *"immunity from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411, 425 (1985). However, certain considerations may defeat a claim of qualified immunity. The Supreme Court has addressed this issue, stating:

> [W]e have held that qualified immunity would be defeated if an official *"knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or if* he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury * * *."

*Harlow*, 457 U.S. at 815, 102 S.Ct. at 2737, 73 L.Ed.2d at 409 (quoting *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214, 225 (1975)).

> Immunity generally is available only to officials performing discretionary functions. * * * [T]he judgments surrounding discretionary action almost inevitably are influenced by the decisionmaker's experiences, values, and emotions. These variables explain in part why questions of subjective intent so rarely can be decided by summary judgment.

*Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737, 73 L.Ed.2d at 409.

In a recent opinion involving qualified immunity, we set out the following:

> [T]he right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: *The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.* This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Park County v. Cooney*, 845 P.2d 346, 351–352 (Wyo.1992) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523, 530 (1987)) (citations omitted).

We went on to say in *Cooney*, that an "established right is one recognized by either the highest state court in the state where the case arose, a United States Court of Appeals, or the United States Supreme Court." *Cooney*, at 352 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir.1988)). We continued, saying, "the right need not have been previously recognized in the exact circumstances of the given case; a reasonable official is required to 'relate established law to analogous factual settings.'" *Cooney*, at 352, (quoting *People of Three Mile Island v. Nuclear Reg. Comm'rs*, 747 F.2d 139, 144 (3d Cir. 1984)).

And the United States Supreme Court has said:

> A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. Decision of this purely legal question permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits.

*Siegert*, 500 U.S. at ———, 111 S.Ct. at 1793, 114 L.Ed.2d at 287.

■■■■ We have determined that the state personnel rules give a probationary employee a reasonable expectation of continued employment and thereby create a corresponding property interest. Once a property interest is created, due process rights attach. *See Loudermill*. We conclude that appellant's property interest in continued employment invokes a concomitant right to due process before deprivation of this interest. This right has been clearly established. We do not decide what pro-

cess is due, only that appellant is entitled to due process as a matter of law.

We hold that the recognition of due process rights entitles Abell to maintain the 42 U.S.C § 1983 claim against Dewey and that summary judgment was improperly granted. It now becomes a question of fact whether this right was clearly established concerning probationary employees or whether the meeting held between Abell and Dewey prior to her termination was sufficient to satisfy the due process requirement. We remand this issue to the trial court for determination.

## DISPOSITION

Linda Abell was terminated from her probationary position as an auditor for the State of Wyoming because of a prior felony conviction. The state personnel rules are clear in requiring "reasonable cause" for the dismissal of a probationary employee and, as such, create a property interest in employment with the concomitant right to due process prior to deprivation. We remand this case to the district court to determine whether a felony conviction constitutes "reasonable cause" under the state's personnel rules. Appellant's 42 U.S.C. § 1983 claim against Dewey survives for resolution by the district court concerning the issue of Dewey's qualified immunity for his actions in appellant's termination.

THOMAS, J., files a concurring and dissenting opinion.

THOMAS, Justice, concurring and dissenting.

I agree with the result of the majority opinion with respect to the claim against the State of Wyoming. That aspect of the summary judgment should be reversed and the case remanded for trial on that claim. I would, however, articulate the rationale for that reversal differently in some respects. With respect to the summary judgment in favor of Roger W. Dewey, I would give him the benefit of the doctrine of qualified immunity and, in disagreement with the majority of the court, I would affirm that aspect of the summary judgment.

I agree with the majority that the State of Wyoming Personnel Rules should be considered as equivalent to an employee handbook or manual. I am reluctant, however, to suggest that the Personnel Rules create a property interest in a probationary employee in the context of *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). The injustice that I am concerned with in this case is not the deprivation of Linda Abell's property right in her State employment. I am concerned with the possibility that the reasonable cause of which she was notified in the termination letter was a reason that she had been told would not be invoked. I would perceive a felony conviction as a reasonable cause for termination in most instances, even though it is not specifically included in the reasons for discipline found in the personnel manual. The same Personnel Rules specifically disavow any right of review and require nothing more than a statement of reasonable cause in the termination letter. Recognition of a general property right in favor of a probationary employee would mean that those provisions are inconsistent with the due process rights articulated in *Loudermill.*

The difficulty in this instance, as I perceive the facts, is that a special condition of employment was attached to Abell's contract. That condition, in effect, was that the State would not discharge her for the felony conviction. After the State learned of the conviction, Abell was reassured that it was not a problem, and the conviction would not be invoked for termination. It seems to me that this feature did create a property right by virtue of the contract that would foreclose that ground for discharge. Any letter of termination would have to articulate some other reasonable cause.

I believe that the State recognized this inherent barrier because the termination letter, while it referenced the felony conviction based upon a plea of nolo contendere and asserted that reason for discharge, articulated other reasons. Dewey also stated that Abell could not adjust to the auditor

position; her record did not meet State standards; and her criminal record would have an adverse effect on the credibility of audits performed by the State. The record does not support the charge that Abell could not adjust to the auditor position, nor does it support the claim that she failed to meet State standards so far as work performance is concerned. The adverse effect of the criminal record on the credibility of audits, if not simply an evasion of the special condition of employment, is a highly subjective matter about which reasonable persons could disagree. Consequently, if that is the reasonable cause for termination as required by the Personnel Rules, in my judgment, the reasonableness of the termination must be tested in a factual context. These are my reasons for requiring a trial.

With respect to the summary judgment in favor of Dewey, there is nothing in the record that would support a conclusion of malice on Dewey's part. I am not satisfied that the contours of any right of Abell's were sufficiently clear that a reasonable official would recognize a letter of termination like the one delivered in this case as violative of Abell's property interest. This is particularly true because of the very limited contractual property right that I find present in these circumstances. I would hold that Dewey was entitled to the benefit of the doctrine of qualified immunity in the context of *Park County v. Cooney,* 845 P.2d 346 (Wyo.1992), and *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

I would reverse the summary judgment granted to the State of Wyoming, remanding the case for trial on the question of whether the impact of Abell's conviction on the integrity of the State auditing process was a reasonable cause for termination. I would affirm the summary judgment in favor of Roger W. Dewey on the ground that he has demonstrated his right to the benefit of the doctrine of qualified immunity.