Thomas Russell COONEY and Lora
John Cooney, Appellants
(Plaintiffs),

v.

Chris J. WHITE, Appellee (Defendant).

No. 88–174.

Supreme Court of Wyoming.

Dec. 31, 1992.

Rehearing Denied Feb. 3, 1993.

L.B. Cozzens of Crowley, Haughey, Hanson, Toole & Dietrich, Billings, for appellants.

Joseph B. Meyer, Atty. Gen., and Sylvia L. Hackl, Deputy Atty. Gen., for appellee.

Before MACY, C.J., and THOMAS, CARDINE, URBIGKIT * and GOLDEN, JJ.

URBIGKIT, Justice.

This appeal involves a decision which was returned to the Wyoming Supreme Court by the United States Supreme Court regarding a prosecuting attorney's conduct, addressed adversely, by a 42 U.S.C. § 1983 (1982) damage complaint. Following a W.R.C.P. 12(b)(6) dismissal by the state district court and this court's subsequent three-to-two decision in *Cooney v. Park County,* 792 P.2d 1287 (Wyo.1990) (*Cooney I*), the United States Supreme Court, with accommodation to *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), *remand* 958 F.2d 374 (7th Cir.1992), requires our reconsideration by direction in decree, *Cooney v. White,* —— U.S. ——, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991):

> [I]t is ordered and adjudged by this Court that the judgment of the above court in this cause is vacated with costs, and that this cause is remanded to the Supreme Court of Wyoming for further consideration in light of *Burns v. Reed,* 500 U.S. [——, 111 S.Ct. 1934, 114 L.Ed.2d 547] (1991).

*See Bush v. Lucas,* 647 F.2d 573 (5th Cir. 1981), *cert. granted* 458 U.S. 1104, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982), *aff'd* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) and Robert L. Stern, Eugene Gressman & Stephen M. Shapiro, *Supreme Court Practice* 279–80 (6th ed. 1986).[1]

---

* Chief Justice at time of oral argument.

1. Contrary to suggestion in dissent, the action of the United States Supreme Court in "judgment vacation and remand in light of * * *" has real meaning. See, for example on this immunity issue where the Seventh Circuit Court of Appeals apparently thought otherwise, *Buckley v. Fitzsimmons,* 919 F.2d 1230 (7th Cir.1990), *cert. granted and judgment vacated in light of Burns,* —— U.S. ——, 112 S.Ct. 40, 116 L.Ed.2d

With recognition that the federal law is determinative for application of immunity defenses for a 42 U.S.C. § 1983 (§ 1983) civil rights complaint, we will consider the direction given in *Burns* and in our companion case, *Park County v. Cooney*, 845 P.2d 346 (Wyo.1992) (*Mayor*), which involves the parole officer in the *Cooney I* civil rights and wrongful arrest complaint.

## I. FACTS PRESENTED BY APPELLATE STATUS

The facts of this case, now postured with a request by the prosecuting attorney for absolute immunity, were exhaustively addressed in *Cooney I*, 792 P.2d 1287 and again considered in *Mayor*, 845 P.2d 346 as the companion appeal. Essentially, within this W.R.C.P. 12(b)(6) motion to dismiss record, the factual detail for testing prosecutorial absolute immunity is simple and easily related. Chris J. White, assistant prosecuting attorney (prosecutor) in Park County, Wyoming, directed a probation officer, resident in Evanston, Uinta County, Wyoming, to prepare a false and perjured petition for revocation of probation against Thomas Russell Cooney. Cooney was working in the oil patch at Bairoil, Wyoming, a corner of Sweetwater County, Wyoming, which is an area under the supervision of the parole office in Rawlins, Carbon County, Wyoming. The prosecutor, knowing that revocation was improper and that the form which he, as deputy county attorney (county official), had directed the probation officer (state official) to prepare was untrue, arranged for the form to be filed in the district court. Based upon this false complaint, the prosecutor secured the issuance of a bench warrant resulting in the incarceration of Cooney for thirty-eight days without opportunity to post bail, be arraigned, secure the assistance of counsel or to obtain any hearing.

Following entry of this court's decision in *Cooney I*, appellants filed a petition for writ of certiorari with the United States

Supreme Court since a § 1983 complaint was included as one count. The decision of this court in *Cooney I* involved application of absolute immunity to this conduct of the county official. The petition for writ of certiorari was held by the United States Supreme Court, without action, until *Burns* was published and then *Cooney I* was vacated and remanded as noted.

This court requested supplementary briefing and, following review, now finds that *Burns* is controlling. We override our prior decision in *Cooney I* and reverse and remand the W.R.C.P. 12(b)(6) dismissal for further district court proceedings.

## II. ISSUE PRESENTED FOR THIS DECISION

Our decision is whether preclusive immunity (absolute immunity) existed in benefit to the prosecuting attorney against damage claims under § 1983 for a sequence of events, which was earlier stated in *Cooney I*, to include:

1. A knowingly perjurious statement in official form was prepared by a parole officer.

2. The perjured statement was knowingly prepared by the parole officer at the direction of the assistant county attorney.

3. The document was prepared within the jurisdiction of the parole officer to accomplish the arrest and confinement of a person on parole who *was not* within the jurisdictional responsibility of that particular parole officer.

4. The parole officer sent the perjured document to the prosecuting attorney for the prosecuting attorney's purpose in filing an order to secure an immediate arrest and a subsequent revocation of probation.

5. The prosecuting attorney knowingly filed the perjured document in order to, and did, secure a warrant for the arrest of the damaged individual.

19 (1991), *remand* 952 F.2d 965 (7th Cir.), *cert. granted in part* —— U.S. ——, 113 S.Ct. 53, 121

L.Ed.2d 23 (1992).

6. The individual was arrested and taken to the jail in Cody.

7. The prosecuting attorney was advised that the individual should be released since the proceeding was improper.

8. Without hearing or appearance before any member of the judiciary, the individual was held in jail for thirty-eight days before appearance and release by judicial action.

*Cooney I*, 792 P.2d at 1316, Urbigkit, J., dissenting (emphasis in original).

The real issue is whether, if Cooney is able to prove some, any, or all of these claims of prosecutorial misconduct, the prosecutor is protected from a damage judgment by some character of immunity authorized as a defense under § 1983. The issue as defined under *Burns* is what, if any, of this conduct by the prosecutor was "giving advice" and what, if any, of the conduct was essentially "prosecutorial" in nature.[2]

In reality, we determine, at least in part, whether telling a probation officer situate in a non-supervising office to prepare a false petition for probation revocation comes within the core criteria provided in *Burns* to be essentially prosecutorial or is moved outside of that core criteria into

giving advice or other non-immunized conduct.[3]

The supplemental briefing of each litigant recognizes the functional test of *Burns*, — U.S. —, 111 S.Ct. 1934 and *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). It is also recognized, explicitly or at least by general application, that the determination of immunity which serves to create a defense under § 1983 is a question of federal law within which the United States Supreme Court "has refused to extend absolute immunity beyond a very limited class of officials * * *." *Hafer v. Melo*, — U.S. —, ———, 112 S.Ct. 358, 363–64, 116 L.Ed.2d 301 (1991). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Confined to that arena of argument, the State articulates a position that the activities of the prosecutor were functionally connected with the initiation and conduct of a prosecution and these were intrinsically associated with the judicial phase of the criminal process. Conversely, Cooney takes his test, also from *Burns*, and argues that the court official's conduct goes beyond the judicial/prosecutorial "function" and comes within the more broadly addressed concepts of giving legal advice or perhaps "suborning perjury." This argument tracks the position of Chief Justice Macy in *Cooney I*, 792 P.2d at 1352,

---

**2.** The litigants would somewhat differently state that issue. Cooney indicates:

> The sole issue considered in this brief is whether a state official who (1) caused a perjured petition to be issued, (2) knowingly used the perjured petition to obtain an arrest warrant for a probationer, (3) used the arrest warrant to cause the probationer to be arrested, and (4) caused the probationer to remain incarcerated without bail or preliminary hearing for 38 days, is entitled absolute immunity from liability under 42 U.S.C. § 1983.

The prosecutor states:

> Whether this court's decision in *Cooney v. Park County* is consistent with the holding and rationale articulated in *Burns v. Reed*. Whether this court should reaffirm its decision in *Cooney*.

In the petition for writ of certiorari, the issue was again somewhat differently stated by these parties. Cooney stated:

> [W]hether a state official who caused a perjured petition to be issued, knowingly used the perjured petition to obtain an arrest war-

rant, and caused a probationer to be arrested and incarcerated without bail or a preliminary hearing for thirty-eight days, is entitled to absolute immunity from liability under 42 U.S.C. § 1983.

The prosecutor related:

> Whether a deputy county attorney's activities in using an allegedly perjured probation revocation petition to obtain a bench warrant, and in causing the probationer to be arrested and detained, were the functional equivalent of a prosecutor's role as an advocate in a criminal proceeding, and hence entitled to absolute immunity.

**3.** The Wyoming process for consideration of probation revocation is presently addressed in W.R.Cr.P. 39 (effective March 24, 1992) and its predecessor, W.R.Cr.P. 33. The two available processes and the procedural criteria to provide due process were comprehensively discussed in *Cooney I*, 792 P.2d at 1307, Urbigkit, J., dissenting. *See also Wlodarczyk v. State*, 836 P.2d 279 (Wyo.1992) and *Hewitt v. State*, 835 P.2d 348 (Wyo.1992).

Macy, J., dissenting: "No one should be immune from civil liability for intentionally committing a criminal act, especially a public official who has taken an oath to uphold the constitution and the laws of the State of Wyoming."

We re-examine this case without being predisposed toward a particular result and re-evaluate the purpose and effect of absolute prosecutorial immunity from civil liability within the context of § 1983 [4]—federal civil rights legislation designed to protect against public sector deprivation of constitutional rights. In reaching our decision, we recognize and benefit from the United States Supreme Court's collaborative reasoning and shared wisdom in *Burns*. We also look for guidance in how other courts have applied *Burns* in the prosecutorial immunity context.

### III. *BURNS* AND OTHER CURRENT FEDERAL CASE LAW

In *Burns*, the police were investigating the shooting and wounding of Cathy Burns' two sons while they slept in her house. *Burns*, —— U.S. at ——, 111 S.Ct. at 1937. Despite Burns' repeated denials, passing a polygraph examination and a voice stress test, and submission of exculpatory handwriting samples, the police viewed her as a primary suspect. Conjecturing that she had multiple personalities, one of which did the shooting, the police wanted to place her under hypnosis and interview her. Concerned that this might be a legally unaccep-

table investigative technique, the police solicited deputy prosecutor Reed who advised them to proceed with an interview under hypnosis. Under hypnosis, Burns referred to the shooter and herself by the same name, "Katie," which the police believed supported their theory. Detaining Burns at the police station, the police again sought Reed's advice whether probable cause existed for arrest. Based upon Burns' statements under hypnosis, Reed told the police that they had probable cause for arrest. *Id.*

Acting on that advice, the police arrested Burns. The next day, Reed and one of the investigating policemen appeared at a probable cause hearing, held by a county court judge, seeking to obtain a search warrant for Burns' house and car. In response to Reed's questioning, the investigating policeman testified that Burns had admitted the shooting. Neither the policeman nor the deputy prosecutor told the judge that the "admission" was obtained under hypnosis nor that Burns had made repeated denials. Misled, the judge issued a search warrant and, later, the prosecutor's office charged Burns with attempted murder. Before trial, however, the trial court granted her motion to suppress the statements made under hypnosis. The prosecutor's office then dismissed all charges. *Id.*

Subsequently, Burns filed a civil rights action under § 1983 against Reed, among others.[5] In the trial against the deputy prosecutor which followed, the district

---

**4.** 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**5.** In addition to suing Reed, Burns also brought § 1983 claims against various police officers and an investigator from the county attorney's office. The district court denied the police officers' motions for summary judgment on the basis of qualified immunity and also held that the investigator was neither absolutely nor qual-

ifiedly immune for submitting a knowingly false affidavit. Consequently, the police officers and the investigator settled with Burns prior to trial for $250,000.

The claim against Reed proceeded to trial after an initial district court ruling that Reed was not entitled to absolute immunity since the court could not ascertain whether Reed was acting within the scope of his prosecutorial duties. However, the district court granted Reed's motion for directed verdict at the close of Burns' case-in-chief after finding that Reed's involvement (the acts of appearing in court to secure a warrant and giving legal advice to the police officers) constituted conduct for which he was absolutely immune. *Burns v. Reed,* 894 F.2d 949, 952 (7th Cir.1990), *aff'd in part and rev'd in part* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), *remand* 958 F.2d 374 (7th Cir.1992).

court held that Reed was absolutely immune from liability. On appeal, the Seventh Circuit Court of Appeals affirmed and the United States Supreme Court granted certiorari. *Id.* —— U.S. at ——––——, 111 S.Ct. at 1937–38.

In *Burns,* the United States Supreme Court was faced with the dual task of deciding whether a state prosecuting attorney was absolutely immune from § 1983 damage liability for: (1) participating in a probable cause hearing, and (2) giving legal advice to the police.[6] *Id.* —— U.S. at ——, 111 S.Ct. at 1936. The United States Supreme Court noted the existing split among the federal circuit courts as to where they "draw the line [for absolute prosecutorial immunity] between protected and unprotected activities." *Id.* —— U.S. at —— n. 2, 111 S.Ct. at 1938 n. 2.

The United States Supreme Court began its analysis by considering its historical recognition of common law immunities within the context of § 1983 claims. The United States Supreme Court discussed the landmark *Imbler,* 424 U.S. 409, 96 S.Ct. 984 decision (the first United States Supreme Court case addressing prosecutorial immunity from § 1983 suits) and, on the underlying basis of necessity to protect the judicial system, reiterated its *Imbler* policy reasons, *see Cooney I,* 792 P.2d at 1290 n. 3, supporting absolute immunity for certain prosecutorial functions. *Burns,* —— U.S. at ——––——, 111 S.Ct. at 1938–39. The United States Supreme Court reiterated its

reliance on the *Imbler* functional approach to immunity determinations and cited its numerous decisions which emphasized that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. * * * The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Id.* —— U.S. at ——, 111 S.Ct. at 1939.

In deciding the first of the two *Burns* immunity questions—Reed's participation in the probable cause hearing—the United States Supreme Court found that, traditionally, prosecutors were "absolutely immune from damages liability at common law for making false or defamatory statements in judicial proceedings * * *." *Id.* —— U.S. at ——, 111 S.Ct. at 1941. Additionally, the United States Supreme Court found support for absolute immunity for participation in a probable cause hearing in the *Imbler* policy concerns[7] and in the fact that the prosecutor's actions during the hearing "clearly involve[d his] 'role as advocate for the State,' rather than his role as 'administrator or investigative officer * * *.'" *Id.* —— U.S. at ——, 111 S.Ct. at 1942 (quoting *Imbler,* 424 U.S. at 430–31, 96 S.Ct. at 994–95). Consequently, the United States Supreme Court held that Reed was absolutely immune from § 1983 liability for his conduct during his appearance as the state's lawyer in the probable cause hearing.[8]

---

**6.** Reed's legal advice to the police officers actually fell into two separate categories as well: (1) giving solicited advice regarding the use of hypnosis; and (2) giving solicited advice relative to the existence of probable cause to arrest. *Burns,* —— U.S. at ——––——, 111 S.Ct. at 1939–40.

**7.** The United States Supreme Court stated in *Burns,* —— U.S. at ——, 111 S.Ct. at 1942:

[P]retrial court appearances by the prosecutor in support of taking criminal action against a suspect present a substantial likelihood of vexatious litigation that might have an untoward effect on the independence of the prosecutor. Therefore, absolute immunity for this function serves the policy of protecting the judicial process, which underlies much of the Court's decision in *Imbler.* * * * Further-

more, the judicial process is available as a check on prosecutorial actions at a probable cause hearing. "[T]he safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct." *Butz [v. Economou],* 438 U.S. [478] at 512, 98 S.Ct. [2894] at 2913, [57 L.Ed.2d 895 (1978)].

**8.** The United States Supreme Court also stated that the "only 'question presented' in [Burns'] Petition for a Writ of Certiorari that related to the search warrant hearing was limited to [Reed's] conduct *in the hearing* [.]" *Burns,* —— U.S. at ——, 111 S.Ct. at 1940 (emphasis added). *But see* Justice Scalia's partial dissent in *Burns,* —— U.S. at ——, 111 S.Ct. at 1945, in which he argues that Burns adequately raised an additional claim regarding the *initiation* of the search warrant proceeding.

In marked contrast to its resolution of the first immunity question in *Burns*, the United States Supreme Court held that Reed was not entitled to absolute immunity for his conduct in providing legal advice to the police in the investigative phase of the criminal case. Essentially, the United States Supreme Court applied the same three-factor test for absolute immunity claims set forth in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) that had previously been applied by the Seventh Circuit Court of Appeals (with a different result) in *Burns v. Reed*, 894 F.2d 949, 954 n. 4 (7th Cir.1990), *aff'd in part and rev'd in part* — U.S. —, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), *remand* 958 F.2d 374 (7th Cir.1992):

> "First, we examine the historical or common-law basis for the immunity in question. Second, we examine whether the functions which the official performs subject him to the same obvious risks of entanglement in vexatious litigation as is characteristic of the judicial process. With this second factor we consider the possibility that losers will bring suit against the decision-makers in an effort to relitigate the underlying conflict and 'charg[e] the participants in the first with unconstitutional animus.' And third, we consider whether the official is subject to checks upon abuses of authority, such as the correction of error on appeal."

As is discussed hereafter, this aspect of the *Burns* complaint essentially limited the scope of the United States Supreme Court's review and, at the same time, is readily distinguishable from the much broader language used by the *Cooneys* in their complaint against the prosecutor.

9. Absolute immunity for prosecutors is a relatively modern judicial common law creation and certainly did not exist at the date the United States Congress enacted the Civil Rights Act in 1871. Except for the more broadly applied defamation immunity, *see Burns*, — U.S. at —, 111 S.Ct. at 1946, Scalia, J., concurring in part and dissenting in part; *see also Cooney I*, 792 P.2d at 1303 n. 5, Urbigkit, J., dissenting, the first appearance of prosecutorial immunity as an affixation to judicial immunity was *Griffith v. Slinkard*, 146 Ind. 117, 44 N.E. 1001 (1896), which was subsequently brought into full flower and recognition in *Imbler*, 424 U.S. at 421, 96 S.Ct. at 990.

*Mother Goose [Nursery Schools, Inc. v. Sendak]*, 770 F.2d [668] at 671 [ (7th Cir. 1985) ].

According to the United States Supreme Court, "absolute prosecutorial immunity [is justified] only for actions that are connected with the prosecutor's role *in judicial proceedings*, not for every litigation-inducing conduct." *Burns*, — U.S. at —, 111 S.Ct. at 1943 (emphasis added). The United States Supreme Court could not find any historical or common-law support for extending absolute immunity to the act of providing legal advice to police officers.[9] *Id.* — U.S. at —, 111 S.Ct. at 1942. The United States Supreme Court stated that providing legal advice to the police was not "so 'intimately associated with the judicial phase of the criminal process[ ]' * * * that it qualifies for absolute immunity." *Id.* — U.S. at —, 111 S.Ct. at 1943 (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 994). The United States Supreme Court re-emphasized its view that absolute immunity is not intended to protect prosecutorial misconduct occurring outside the confines of the immediate judicial process.[10]

The United States Supreme Court also failed to find support for granting absolute immunity for giving legal advice under the second *Butz* "risk of vexatious litigation" factor since the United States Supreme Court felt that a suspect would probably not be as aware of the prosecutor's role in giving advice as he/she would be of the

10. The United States Supreme Court commented on an argument contained in an amicus brief filed by the United States:

> The United States argues that giving legal advice is related to a prosecutor's roles in screening cases for prosecution and in safeguarding the fairness of the criminal judicial process. * * * That argument, however, proves too much. Almost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive. Rather, as in *Imbler*, we inquire whether the prosecutor's actions are closely associated with the judicial process.

*Burns*, — U.S. at —, 111 S.Ct. at 1944.

prosecutor's involvement in initiating and conducting a prosecution. *Burns,* —— U.S. at ——, 111 S.Ct. at 1943. In this regard, the United States Supreme Court stated:

> [T]he qualified immunity standard is today more protective of officials than it was at the time that *Imbler* was decided. "As the qualified immunity defense has evolved, it provides ample support to all but the plainly incompetent or those who knowingly violate the law."

*Id.* —— U.S. at ——, 111 S.Ct. at 1944 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986)) (footnote omitted). Finally, the United States Supreme Court found that the procedural and judicial safeguards designed to check prosecutorial abuses do not necessarily restrain out-of-court activities prior to the initiation of a prosecution. *Burns,* —— U.S. at ——, 111 S.Ct. at 1944.

In conclusion, the United States Supreme Court held that Reed had "not met his burden of showing that the relevant factors justify an extension of absolute immunity to the prosecutorial function of giving legal advice to the police." *Id.* —— U.S. at —— - ——, 111 S.Ct. at 1944–45. Thus, the United States Supreme Court reversed that portion of the Seventh Circuit's judgment which extended absolute immunity to Reed's acts of giving legal advice to the investigating police officers.[11]

Having determined that Reed was entitled to absolute immunity from § 1983 liability for participating in a probable cause hearing but that he was not entitled to absolute immunity for giving legal advice to the police officers, the United States Supreme Court affirmed in part and reversed in part the Seventh Circuit's prior ruling in *Burns,* 894 F.2d 949.

Upon remand, Reed requested the Seventh Circuit determine whether he was entitled to qualified immunity for the advice he gave the police officers. Burns, on the other hand, argued that since the only issue on appeal was the propriety of the district court's order granting absolute im-

munity to Reed, the Seventh Circuit should remand to the district court "for re-trial in a manner consistent with the Supreme Court opinion." *Burns v. Reed,* 958 F.2d 374 (Table) (Unpublished disposition at 1, 3/25/92) (7th Cir.1992). The Seventh Circuit agreed with *Burns:*

> *With its decision [in Burns], the Supreme Court has altered the landscape regarding official immunity.* We decline to review the issue of Reed's qualified immunity when the parties have not had a proper opportunity to present their case to the district court. Though Reed correctly points out that the district court already has heard all the relevant facts, he overlooks the fact that the district court has not had an opportunity to rule on Reed's alternative claim of qualified immunity for the advice he gave to the police officers. Therefore, we vacate our decision in *Burns* as far as it conflicts with the Supreme Court's opinion, and remand the case to the United States District Court for the Southern District of Indiana, Indianapolis Division, for re-trial.

*Id.* at 2 (emphasis added).

In the petition for a writ of certiorari, filed with the United States Supreme Court, Cooney accurately argued that conflicts existed within the federal circuits regarding the reach and preclusiveness of prosecutorial immunity. A case from the Tenth Circuit Court of Appeals closely anticipated the present *Burns* decision. In *Rex v. Teeples,* 753 F.2d 840 (10th Cir.), *cert. denied* 474 U.S. 967, 106 S.Ct. 332, 88 L.Ed.2d 316 (1985), the prosecution went beyond activities intrinsically associated with initiating a prosecution and presenting the state's case by personal involvement in a pre-indictment interrogation alleged by the accused to be unconstitutionally coercive. The Tenth Circuit said:

> Absolute prosecutorial immunity extends no further than necessary to protect those activities. *See Harlow v. Fitzgerald,* 457 U.S. 800, 811, 102 S.Ct. 2727,

---

**11.** The application of *Burns* on the conduct of prosecution offices has not gone unnoticed. *See* Thomas M. Davy, *Prosecutor Immunity: The*

*Impact of Burns v. Reed,* 25 The Prosecutor 21 (Winter 1992).

2735, 73 L.Ed.2d 396 (1982). Consequently, a prosecutor acting as an investigator has only qualified immunity. *See id.* 457 U.S. at 811 n. 16 [102 S.Ct. at 2734 n. 16] * * *. Although identifying those acts entitled to absolute immunity is not always easy, the determinative factor is "advocacy" because that is the prosecutor's main function and the one most akin to his quasi-judicial role.

*Rex,* 753 F.2d at 843. The direction by the prosecutor of police-related work in *Rex* is closely identifiable with what the prosecutor did in this case in regard to the direction given to the probation officer to advise and direct his action in utilization of the false text which was included in the revocation petition.

A second case currently remanded by the United States Supreme Court, *Buckley v. Fitzsimmons,* — U.S. —, 112 S.Ct. 40, 116 L.Ed.2d 19 (1991), *remand* 952 F.2d 965 (7th Cir.), *cert. granted in part* — U.S. —, 113 S.Ct. 53, 121 L.Ed.2d 23 (1992), although demonstrably inflexible in delineation of core function, quasi-judicial from other activities, travelled a faster road. The circuit court denied relief to the defendant on remand and, on October 5, 1992, the United States Supreme Court granted the new writ of certiorari on the prosecutorial absolute immunity issue of pre-indictment supervision of law enforcement investigation activities and alleged false "press conference" statements about the defendant and his guilt.[12]

A post-*Burns* Third Circuit Court of Appeals forfeiture case has matured. *Schrob v. Catterson,* 948 F.2d 1402 (3rd Cir.1991) is differentiated by allegation of the prosecutor lying to the judiciary in order to secure issuance of the search warrant. Even so, at best, qualified immunity would be provided to a "retention and management of the seized property" function undertaken by the prosecutor in that case. *Id.* at 1420. In reviewing that property return and management category of the *Schrob* complaint, within a perspective with what was said in *Burns,* the court stated:

A significant factor in our decision to deny [the prosecutor] absolute immunity in connection with the retention and management of the seized property is that, as in *Burns,* the judicial process will not serve as an adequate check on a prosecutor's actions in those respects. In cases such as the present one, where the seizure is not authorized from the start, the property is returned without judicial process when the government admits its mistake. When such a wrongful seizure occurs, it causes the owner to lose the value of his property so long as it remains in government hands. A grant of absolute immunity for such actions would allow the government to seize property wrongfully without accountability.

*Schrob,* 948 F.2d at 1420.

Consequently, *Schrob* found that retention and management functions "are not directly related to the judicial process;" but, instead, involved the prosecutor acting in an administrative role. *Id.* at 1419. Thus, the court remanded that portion of the district court's decision denying the prosecutor absolute immunity for his property retention and management actions for determination as to whether or not he is shielded from liability on the basis of qualified immunity.[13] *Id.* at 1420.

**12.** With *Buckley* back in the United States Supreme Court, there is a third case similarly remanded, *Gidney v. Camden County Prosecutor's Office,* — U.S. —, 111 S.Ct. 2791, 115 L.Ed.2d 966 (1991), which has provided no post-*Burns* reported opinion from which precedent or logic in application of their interpretation of *Burns* could be derived.

**13.** In setting forth the appropriate test for qualified immunity, the court in *Schrob,* 948 F.2d at 1420–21 (footnote omitted) stated:
[The prosecutor] will be shielded from liability of his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (citations omitted); *see Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987). Since a motion to dismiss is determined from the face of the complaint, [the prosecutor] must be given an opportunity on remand to show that there is no genuine issue of material fact concerning the "objective reasonableness of his conduct," or that he had no involvement in the actions alleged. The limited record before

There is an even more closely identifiable case of recent vintage from the Seventh Circuit Court of Appeals. *Houston v. Partee*, 978 F.2d 362 (7th Cir.1992). As a result of the El Rukn gang prosecutions in Chicago, defendants were convicted of murder in the Illinois state court. Others, post trial, confessed to the crimes, but the prosecutors "confined the knowledge" of the confessions. Ultimately, the secret got out and the defendants, after release from prison, sued the prosecutors in a § 1983 action. Absolute immunity was denied by the United States District Court and, following interim appeal, that decision was affirmed in a comprehensive and thoughtful decision by the court of appeals.

Incidentally, that court *also* recognized its Canon 3(B)(3) Code of Judicial Conduct responsibilities and "DIRECT[ED] THE CLERK OF COURT to send a copy of this opinion to the Illinois Attorney Registration and Disciplinary Commission to monitor further developments of this case on remand and to take any appropriate disciplinary measures it deems necessary." *Id.* at 369.

## IV. DISCUSSION

With this background in the federal case law, we address the prosecutor's contention that the United States Supreme Court's ruling in *Burns* justifies continuing prosecutorial absolute immunity for this case. We disagree and have identified two primary reasons why our reconsideration of this case compels partial reversal of the district court's dismissal of the Cooneys' § 1983 claim against the prosecutor: (1) under *Burns,* the prosecutor failed to meet his burden of showing that extension of absolute immunity is required for some of his actions; and (2) this court's reliance on *Blake v. Rupe,* 651 P.2d 1096 (Wyo.1982), *cert. denied* 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983) in *Cooney I* was misplaced.

### A. *Extension of Absolute Immunity for Certain Actions is Not Justified*

■ *Burns,* — U.S. at —, 111 S.Ct. at 1939, stated that "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Starting with the proposition that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties," it is clear that the United States Supreme Court imposes a threshold requirement on any person seeking absolute immunity from § 1983 liability that must be met before absolute immunity will be available. *Id.* This is identical to the law for the Tenth Circuit in *Rex,* 753 F.2d at 843 by citation to *Harlow,* 457 U.S. at 811, 102 S.Ct. at 2734.

In *Cooney I,* this court examined the prosecutor's conduct *taken as a whole.* It was then determined that the *"challenged activities* [were] intimately associated with the judicial phase of the criminal process and [were] functions to which the reasons for absolute immunity apply with full force." *Cooney I,* 792 P.2d at 1298 (emphasis added). The "challenged activities" were, for the most part, not separately discussed; rather, they were viewed as part of the prosecutor's undifferentiated and ongoing involvement in Cooney's probation revocation process. In the present case, however, we are compelled by *Burns* to examine *each phase* of the prosecutor's alleged conduct to ascertain whether extension of absolute immunity to that particular activity is justified. *See Snell v. Tunnell,* 920 F.2d 673 (10th Cir.1990), *cert. denied* — U.S. —, 111 S.Ct. 1622, 113 L.Ed.2d 719 (1991); *Rex,* 753 F.2d at 843; and *McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir.1982), *cert. denied* 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

We begin by recognizing the specific allegations of prosecutorial misconduct raised by the Cooneys in their original complaint:

12. *On January 24, 1986* Defendant Robert Mayor contacted Defendant Chris

this Court precludes us from making such a determination. *See Brown v. United States,* 851 F.2d 615, 619–20 (3rd Cir.1988) (record provided insufficient basis for resolution of qualified immunity issue on appeal).

J. White, who was then the Deputy County Attorney for Park County, Wyoming, and advised him that Mr. Cooney had failed to contact his probation officers as required by the terms of his probation, and that he had relocated from Riverton, Wyoming without permission and consent from his probation officers. At that time, *Defendant Mayor was requested by Defendant White to prepare a petition for revocation of Mr. Cooney's probation.*

13. *On January 29, 1986* Cindy Johnson [Cooney's former probation officer in Riverton, Wyoming] telephoned Defendant Robert Mayor and advised him that the [Cooneys] were residing in Bairoil, Wyoming in accordance with permission previously given, that she had been in contact with Mr. Cooney by telephone, and that she had filed reports evidencing the required contact with the Department of Probation and Parole for October and November, 1985. On that date *Defendant Mayor telephoned Defendant White and advised him of the mistake* of the Wyoming Department of Probation and Parole concerning the [Cooneys'] residence. Defendant Mayor further advised Defendant White that Mr. Cooney had actually been in contact with the Department of Probation and Parole as required by the terms of his probation. Notwithstanding that information, *Defendant White again requested Defendant Mayor to prepare and forward a petition to revoke Mr. Cooney's probation.*

14. *Pursuant to Defendant White's request, Defendant Mayor prepared a document entitled Petition for Revocation of Probation and Bench Warrant* dated January 29, 1986 in which Defendant Mayor fraudulently and falsely, with full knowledge of the falsity thereof, swore under oath that Mr. Cooney had failed to maintain contact with the Wyoming Department of Probation and Parole and that he had changed his address without prior notification.

15. Defendant Mayor forwarded the Petition For Revocation of Probation and Bench Warrant to *Defendant White who* *wrongfully, and with knowledge of the falsity of said Petition, presented the Petition to [the Fifth Judicial District] Court, pursuant to which a Bench Warrant for the arrest of Mr. Cooney was issued* on February 7, 1986.

\* \* \* \* \* \*

18. \* \* \* [O]n March 15, 1986 \* \* \* an officer of the Wyoming Highway Patrol stopped the [Cooneys] and arrested Mr. Cooney pursuant to the Bench Warrant wrongfully obtained by Defendant White on February 7, 1986. Mr. Cooney was transported to the jail in Cody, Park County, Wyoming, leaving \* \* \* Lora John Cooney stranded with all of the [Cooneys'] belongings and their child in Bairoil, Wyoming.

19. Defendants Mayor and *White did nothing to prevent the arrest of Mr. Cooney* even though they knew at the time they created and presented the Petition for Revocation of Probation and Bench Warrant that the allegations contained therein were false, and even though they knew or should have known thereafter that Mr. Cooney was properly in contact with the probation officer in Rawlins, Wyoming and complying with the terms and conditions of his probation.

20. *During the time that Mr. Cooney was incarcerated in the Park County Jail, Defendant Chris White* was contacted by [a Park County Public Defender] who requested that Mr. Cooney be released from jail until the hearing on the Petition because the arrest warrant had originally been issued pursuant to false and inaccurate information. Defendant Chris White *continued to refuse to allow the release of Mr. Cooney from jail.*

21. Mr. Cooney remained incarcerated in the Park County Jail in Cody, Wyoming until April 21, 1986 at which time the Petition to revoke his [probation] was denied by [the Fifth Judicial District] Court after hearing.

\* \* \* \* · \* \*

26. In causing Mr. Cooney to be arrested and incarcerated for thirty-eight

(38) days for an alleged violation of the terms of his probation when the Defendants know or should have known that Mr. Cooney had not violated his probation, all of the Defendants acted under color of state law to deprive the [Cooneys] of the rights, privileges and immunities secured to them by the United States Constitution and the laws of the United States, and are, therefore, liable to the [Cooneys] for the damages arising therefrom under 42 U.S.C. § 1983.

27. Defendants Mayor and White prepared the Petition to revoke Mr. Cooney's probation, secured the Bench Warrant and allowed Mr. Cooney to be arrested and incarcerated for thirty-eight days with full knowledge that the Petition was false with the intent to deprive the [Cooneys] of their Constitutional rights and in reckless, willful and wanton disregard of the rights of the [Cooneys].

(Emphasis added.)

With the exception of the third category, the Cooneys' characterization of the appellate issue in this case accurately depicts the four categories of alleged prosecutorial misconduct originally challenged in their initial complaint regarding the prosecutor's: (1) conduct in causing the perjured probation revocation petition to be issued; (2) use of the perjured petition to obtain an arrest warrant; (3) conduct in using the arrest warrant to secure Cooney's arrest; and (4) role in causing Cooney to remain incarcerated for thirty-eight days. We apply functional analysis within the doctrinal framework of *Burns* as we consider each category of challenged conduct.

### (1) Conduct in Causing the Perjured Probation Revocation Petition to be Issued

The Cooneys contend that, on two separate occasions, the prosecutor requested the probation officer to prepare a petition for Cooney's probation revocation. The significant difference between the two requests is the allegation that, in the five-day interim between requests, both the probation officer and the prosecutor learned of Cooney's unblemished probationary status and yet, nonetheless, proceeded with preparation of the revocation petition.

We recognize the procedural dissimilarity but conceptually analogous relationship between the prosecutor's proffer of solicited legal advice to the police officers in *Burns* and this prosecutor's second advisement that the probation officer should prepare a knowingly falsified probation revocation petition for Cooney. Consequently, our analysis in this section closely parallels section III–B in *Burns*, —— U.S. at —— – ——, 111 S.Ct. at 1942–45.

■ Neither the parties in their briefs nor extensive research by this court have identified any common law or other historical basis for extending absolute immunity to the public official's actions in suborning the perjured probation revocation petition.[14] *Burns*, —— U.S. at ——, 111 S.Ct. at 1942. The prosecutor's involvement in advising the probation officer how best to proceed with the information at hand involved voluntary, non-judicially and non-statutorily imposed conduct. Pursuant to statutory provisions for probation revocation in place at the time, Wyo.Stat. § 7–13–409 (renum-

---

**14.** Despite what the dissents may contend, the issue in this appeal is whether the prosecutor should be immunized from a trial which is directed to determine the validity of an alleged claim that he suborned perjury in accomplishing the arrest and confinement of Cooney. Perjury is a felony. Wyo.Stat. § 6–5–301 (1988). *See* n. 15, *infra.* The county and prosecuting attorney, or his deputy, is charged in professional responsibility with *law enforcement.* Most likely, with the warning obviously provided in this decision, no reoccurrence of a case of this character should rationally be expected within the Wyoming justice delivery system.

The dissent of Justice Thomas is partially correct; this case is not like *Burns*, —— U.S. ——, 111 S.Ct. 1934. It is much worse in its present stage of admitted facts for pleading purposes in consideration of the W.R.C.P. 12(b)(6) motion to dismiss record. The allegations against chief deputy prosecutor Reed in *Burns* did not include the contention that he committed perjury, e.g., a crime in arranging the arrest of Ms. Burns. *See* James Lappan, *The Prosecutor, the Investigator, and the Administrator. 42 U.S.C. § 1983 and Burns v. Reed: The Hammer Has Dropped,* 62 Miss.L.J. 169 (1992) and the quotation included from James Joyce, *Ulysses* 455 (1914).

bered in 1987 to Wyo.Stat. § 7–13–408), there is nothing to compel county attorney involvement (whether solicited or otherwise) in the *preparation* phase of a revocation petition. As we noted in the companion case of *Mayor*, 845 P.2d 346, the *Cooney*-type of probation revocation proceeding involved a "discretionary, executive function"—it did not entail a probation officer or deputy county attorney acting at the direction of a court. *Hewitt v. State*, 835 P.2d 348 (Wyo.1992). *See also Petition of Padgett*, 678 P.2d 870 (Wyo.1984). *Cf. Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir.1979).

■ Unlike the factual circumstance in *Butz*, 438 U.S. 478, 98 S.Ct. 2894 (in which the United States Supreme Court found that Department of Agriculture officials were entitled to absolute immunity for performing functions analogous to those of a prosecutor), in this stage of the Cooney revocation proceeding the prosecutor was functioning more like a probation officer than as a county attorney responsible for criminal conduct prosecution. It was not his job to request probation revocation petitions—perjured or otherwise—from probation officers and the judicial system did not rely on him to do so. *See McArdle v. Tronetti*, 961 F.2d 1083 (3rd Cir.1992). As set forth and discussed in *Mayor*, 845 P.2d 346, a probation officer performing the discretionary function of preparing a petition to revoke probation is only entitled to qualified immunity. Thus, we do not find the prosecutor's conduct in this case to be "so 'intimately associated with the judicial phase of the criminal process' * * * that it qualifies for absolute immunity." *Burns*, — U.S. at ——, 111 S.Ct. at 1943 (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. at 994).

■ Similarly, we are unable to find a public policy argument to extend immunity for any action in allegedly suborning perjury [15] at this preliminary and entirely out-of-court stage of Cooney's probation revoca-

tion proceeding. *See Tower v. Glover*, 467 U.S. 914, 922–23, 104 S.Ct. 2820, 2825–26, 81 L.Ed.2d 758 (1984). In *Burns*, — U.S. at ——, 111 S.Ct. at 1944 (quoting *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096), the United States Supreme Court hit this prosecutor's status precisely on its figurative head when it asserted that qualified immunity provides ample protection for "all but the plainly incompetent or those who knowingly violate the law." Further, in recognizing that the absence of absolute immunity may cause prosecutors to more carefully consider their legal advice, the United States Supreme Court stated that " ' "[w]here an official could be expected to know that his conduct would violate statutory or constitutional rights, he *should* be made to hesitate." ' " *Burns*, — U.S. at ——, 111 S.Ct. at 1944 (quoting *Malley*, 475 U.S. at 341, 106 S.Ct. at 1096 and *Harlow*, 457 U.S. at 819, 102 S.Ct. at 2738) (emphasis in original). If the alleged facts in *Cooney I* are proven at trial, the prosecutor would have been well-advised to hesitate to the point of not acting instead of requesting the probation officer to proceed with preparation of the perjured revocation petition.

Finally, in reconsidering the availability of procedural safeguards other than § 1983 civil liability to deter prosecutorial misconduct, we conclude (just as the United States Supreme Court did in *Burns*, — U.S. at ——, 111 S.Ct. at 1944) that the judicial process could not—and *did not*—serve to restrain the injurious out-of-court activities of the prosecutor. We do not now elect to follow the majority's discussion in *Cooney I* of "due process safeguards" or any conclusions about adequate protection in the probation revocation process. *Cooney I*, 792 P.2d at 1295. We base our departure from this segment of the majority in *Cooney I* on the critical factor that all such "due process safeguards" depend on judicial intervention and are premised on the

---

**15.** Perjury is a crime in Wyoming under Wyo. Stat. § 6–5–301 (1988) for which a maximum sentence of five years imprisonment and/or a fine of $5,000 can be imposed. Suborning perjury comes within the Wyoming accessory before the fact statute, Wyo.Stat. § 6–1–201 (1988), for which the same punishment as the principal offense is proscribed. "Subornation of perjury" is defined as "[t]he offense of procuring another to take such a false oath as would constitute perjury in the principal." Black's Law Dictionary 1426 (6th ed. 1990).

assumption that the judge will be given complete and accurate information. Where, as here, the perjured petition is prepared *prior* to court involvement and the petition is then advanced through the revocation proceeding without the judge ever becoming informed of the inherent fallacy of the document's contents, the "safeguards" are useless.

Furthermore, this case presents contentions for our examination of immunized criminal conduct for which we do not find any "balancing" of protections for the victim to be a persuasive argument. That supposition or justification, judicially created to keep the law enforcement mechanism operational, does not justify adaptations to activities incrementally related to judicial immunity from which the entire protective umbrella was derived in the 1896 Indiana case of *Griffith v. Slinkard,* 146 Ind. 117, 44 N.E. 1001 (1896) to then be broadly applied for the § 1983 case law in *Imbler,* 424 U.S. at 421, 96 S.Ct. at 990. *See* Seth F. Kreimer, *The Source of Law in Civil Rights Actions: Some Old Light on Section 1988,* 133 U.Pa.L.Rev. 601, 609 n. 35 (1985). In this circumstance, unrequited damage to the victim can hardly be equalized against potential rehabilatory assessment of "punishment" against the public officeholder miscreant. Damages paid for damages done is singularly more satisfying to the party injured and we consider, at least in this circumstance, justifiably so.

### (2) Use of the Perjured Petition to Obtain an Arrest Warrant

Because the record in this civil case is void of material relevant to the district court hearing conducted for the purpose of issuing a bench warrant for Cooney's arrest, it is impossible to determine precisely what role the prosecutor played in securing the warrant.[16]

Appellants make no claim against the prosecutor as a damage claim for his activities involved in the conducted revocation hearing, so we need not address the absolute immunity application to that session.[17] Holding as we do that absolute immunity does not apply to the advisement conduct of appellee in his directions given to the probation officer to prepare the revocation petition, we are left with the intermediate stages (numbers 2, 3 and 4) which followed petition preparation and preceded the hearing and consequent revocation rejection. Appellants, in their brief, detail the four stages of the prosecutor's conduct to be:

(1) His decision to request a perjured petition for revocation of probation and for a bench warrant from Robert Mayor.

(2) His decision to use that perjured petition to cause a warrant to be issued for Mr. Cooney's arrest.

(3) His conduct in using the bench warrant to cause Mr. Cooney to be arrested.

(4) His conduct in causing Mr. Cooney to remain incarcerated without a preliminary hearing or opportunity for bail for 38 days.

Essentially, items two and three address activities to cause arrest and item four considers the prosecutorial responsibility for judicial probation revocation pre-hearing proceedings. *See Weisser v. State,* 600 P.2d 1320 (Wyo.1979); *Knobel v. State,* 576 P.2d 941 (Wyo.1978); and Wyo.Stat. § 7–13–408.[18] We are confined by this W.R.C.P. 12(b)(6) record with minimal information. The Cooneys neither allege their knowledge of, or suspicion about, why

---

**16.** All that was said in *Cooney I,* 792 P.2d at 1289, was that:

> Mayor then forwarded the [probation revocation] petition to White who presented it to the district court. Based on the petition, the district court issued a bench warrant for Mr. Cooney's arrest on February 7, 1986.

**17.** Clearly, following *Burns,* we would find that the proceeding falls within the judicially impacted compartment of prosecutorial activities and, consequently, is served by absolute immunity in favor of the prosecutor.

**18.** W.R.Cr.P. 39 (effective March 24, 1992) in rewriting the prior judicial probation revocation rule, W.R.Cr.P. 33(f), recognized in specific provisions the due process concerns created by the *Cooney* litigation. The rule includes an alternative process of an order to appear instead of a bench warrant and arrest. The rule then requires that if arrested, the individual is given the right to a mandatory forty-eight hour judicial appearance.

the prosecutor did what he did. Nothing else adds detail or value to the complaint. One of the problems to be faced with this indeterminate status of what really happened and why (now after five years in litigation, nothing has been filed as an allegation pleading for the prosecutor professing contention of what he did and why) is that the *law* on the use of a perjured petition by the prosecutor to get an arrest warrant is, to put it mildly, unresolved by the United States Supreme Court. Left open, on that non-presented issue in *Burns,* is majority disinclination to determine prosecutorial immunity application to "motivation in seeking a search warrant." The identical subject is presented here by use of the perjured petition—not its presentation in court necessarily, but the original involvement in its creation and any subsequent usage knowing it was perjured as conduct "outside of the courtroom."

This topic became the subject of the carefully written partial dissent by Justice Scalia in *Burns* to discuss "a form of prosecutorial action not addressed by the Court, and one that is arguably more difficult to analyze under the common law * * *." *Burns,* —— U.S. at ——, 111 S.Ct. at 1946. In *Burns,* that question is stated by Justice Scalia to be whether "a constitutional violation occurred in the prosecutor's initiation of the search warrant proceeding." *Id.* —— U.S. at ——, 111 S.Ct. at 1945. Justice Scalia, in his partial dissent with two other justices joining, rejected any extension of absolute immunity beyond the courthouse door to activities involved in seeking a search warrant. A close comparison in system operational relevance can be discerned between the topic of his discussion and the course of events portrayed by allegations of the plaintiff in *Cooney I.*[19]

With the choices available to this court following remand, we elect not to attempt to presently assess immunity, absolute or otherwise, to the activities of the prosecutor which were not conducted within court appearances. We reject absolute immunity for the initiated advice and direction to the probation officer to prepare a knowingly falsified petition, recognize no question presented about conduct of the finally conducted hearing, and leave for factual development differentiations in function between quasi-judicial and administrative activities for what occurred at other stages of this transaction, e.g., following prosecutor/attorney advice to the probation officer to prepare and sign the revocation petition and the date that a revocation hearing was later conducted by the district court.

### (3) Retention in Jail Without Bond or Judicial Appearance

The expectancy of bail under W.R.Cr.P. 33(f), then in effect, clearly existed. "The defendant may be admitted to bail pending such hearing." We do not have factual information within this record to attempt to overlay this conduct on the philosophic pinnings of prosecutorial behavior judicial immunity. Whether this unexcusable event resulted from judicial unavailability, prosecutorial inattention, neglect or negligence, or some undetermined intentional malicious reactivity is simply not factually addressed. To anticipate United States Supreme Court decisions based upon *Burns,* in the absence of some determination of fact regarding the activities of the governmental official to which absolute immunity could extend, poses a challenge for our factually hypothetical analysis which we choose not to undertake.[20]

**19.** There is also federal district and circuit court case law which questions prosecutorial absolute immunity in pre-indictment search and seizure activities, including arrest of a witness, *Snell,* 920 F.2d 673; *Hooper v. Sachs,* 618 F.Supp. 963 (D.Md.1985), *aff'd* 823 F.2d 547 (4th Cir.), *cert. denied* 484 U.S. 954, 108 S.Ct. 347, 98 L.Ed.2d 373 (1987); or confinement in a particularly offensive jail, *Price v. Moody,* 677 F.2d 676 (8th Cir.1982). *See also Edgar v. Wagner,* 101 Nev. 226, 699 P.2d 110 (1985) (state court). Similarly, there is no immunity for the private lawyer.

*Robinson v. Volkswagenwerk AG,* 940 F.2d 1369 (10th Cir.1991), *cert. denied* —— U.S. ——, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992).

**20.** Somewhat apropos, Judge Baldock, in writing the majority opinion in the factually complex immunity determinative case of *Snell,* 920 F.2d at 675, opined:

We should be careful to get out of an experience only the wisdom that is in it—and stop there; lest we be like the cat that sits down on

### B. Misplaced Reliance on Blake in Cooney I

In addition to applying the *Imbler* "functional approach" to balance a prosecutor's service to society against the rights of private citizens to be protected from prosecutorial abuse, *Cooney I*, 792 P.2d at 1291, the majority in *Cooney I* also relied on *Blake*, 651 P.2d 1096 for the proposition that Wyoming had extended absolute immunity to county and prosecuting attorneys performing investigative functions.

*Blake* involved a county attorney (Blake) who requested that an investigator for the prosecutor's office file a criminal complaint alleging perjury against an individual (Rupe) who had served as a juror on two previous trials. The criminal complaint alleged that Rupe had failed, during voir dire, to disclose a prior felony conviction which would have disqualified him as a juror. After the criminal complaint was dismissed on the basis of Rupe's presentation of evidence that he had received a pardon from his felony conviction for issuing a fraudulent check, Rupe brought suit stating various tort claims under state law and a § 1983 federal civil rights action against Blake and the investigator.

During trial, the "count for violation of Rupe's civil rights under 42 U.S.C. § 1983 was dismissed by the trial judge at the close of plaintiff's evidence and did not serve as a basis of the verdict and judgment." *Blake*, 651 P.2d at 1101. Following trial, a jury verdict was returned on the remaining state tort claims and judgment was entered awarding Rupe $40,000 actual damages and $105,000 punitive damages against Blake and $20,000 actual damages and $35,000 punitive damages against the investigator. *Id.* at 1097–98. This court reversed and remanded with directions to vacate the judgment after determining that the prosecutor and investigator were absolutely immune from suit.

A closer look at this court's reliance on *Blake* in deciding *Cooney I* merits consideration. In *Cooney I*, 792 P.2d at 1291, we said:

> This court adopted the [*Imbler*] functional analysis in *Blake*. In *Blake* this court extended absolute immunity to a county and prosecuting attorney who employed and supervised an investigator to check both court and penitentiary records, investigated matters preliminary to initiating the prosecution, and presented the prosecution of the state's case of perjury charges against a juror. *Blake*, 651 P.2d at 1104. Relying on *Imbler* and decisions following that case, this court determined that the prosecutor's challenged activities were intimately associated with the judicial phase of the criminal process.

As noted in a dissenting opinion in *Cooney I*, 792 P.2d at 1326–27, Urbigkit, J., dissenting, but unheeded by the then-majority of the court was the critical factor that *Blake's* extension of absolute immunity to prosecutors engaged in investigative activities involved only state tort claims and state common-law immunities—*not* immunity from suit under federal civil rights legislation. Thus, in actuality, since *Blake* only governs common law prosecutorial immunity from state tort claims, it provides no support for recognizing absolute prosecutorial immunity within the federal § 1983 context.

If implemented, application of state common law or legislatively imposed statutory immunities to create a shield against federal legislation designed to deter civil rights violations would ignore Congressional intent and, more importantly, would eviscerate § 1983. *Blake* does not and should not compel imposition of state common-law prosecutorial immunities which, in effect, would circumvent federal civil rights legislation designed to protect individuals from state action depriving them of "any rights, privileges, or immunities secured by the Constitution and laws * * *." 42 U.S.C. § 1983. Thus, upon reconsideration of *Cooney I*, we find no support in *Blake* as a state immunity decision for extending abso-

---

a hot stove-lid. She will never sit down on a hot stove-lid again—and that is well; but she will never sit down on a cold one any more.

Pudd'nhead Wilson's New Calendar. M. Twain, *Following the Equator* ch. XI at 107 (Harper Bros. ed.).

lute immunity within federal law concepts of § 1983 to the prosecutor for his actions in preparing the petition to revoke probation and his subsequent conduct in detaining Cooney in jail for thirty-eight days following his arrest under federal law concepts of prosecutorial immunity that will superintend our decision in this case.

## V. CONCLUSION

We do not necessarily determine the preclusion of immunity to claims involving motivation for arrest or reason for jail retention. Those now undisclosed subjects of this litigation should best be resolved by the district court on some character of factual record examination. We hold that absolute immunity does not apply to the advisement and discussion with the probation officer regarding preparation of the original petition for revocation. Whether other conduct is actionable, despite defenses of immunity, will not be resolved by this court on this present W.R.C.P. 12(b)(6) record.

Having found that appellee is not entitled to complete absolute immunity from liability, we remand this case for further proceedings in the district court. Unlike our disposition in *Mayor*, 845 P.2d 346 (the companion case involving Cooney's probation officer), we are not called upon and thus do not decide whether the prosecutor is, in any case, entitled to qualified immunity for whatever he did as a matter of law. Because of the district court's absolute immunity dismissal of the claims against him (and our affirmation in *Cooney I*), a determination has yet to be made as to whether the prosecutor is or is not entitled to qualified immunity. Even though we said in *Cooney I*, 792 P.2d at 1288 that we were "asked to decide * * * what level of immunity * * * we will extend to [the prosecu-

tor]," the qualified immunity question has not been adequately presented in any phase of these proceedings.[21]

█ In reaching this result and reversing particular aspects of *Cooney I*, we recognize a basic flaw in that case—it failed to account for the fundamental proposition that qualified immunity from civil liability is the rule rather than the exception. The United States Supreme Court has firmly established that qualified immunity provides adequate protection for many of the duties required of a prosecutor. A prosecuting attorney claiming absolute immunity is required to meet a threshold burden of entitlement before absolute immunity will be extended beyond the fundamental activities of the criminal case prosecution.

Reversed and remanded for further proceedings in conformity herewith.

CARDINE, J., concurred in the result.

THOMAS, and GOLDEN, JJ., filed separate dissenting opinions.

THOMAS, Justice, dissenting.

I, too, dissent from the resolution of this case upon vacation and remand by the Supreme Court of the United States. I join in the dissenting opinion of Justice Golden, which I find to present a correct analysis of the case before us, but I add some comments of my own.

It is disingenuous for the court, even in a plurality opinion, to purport to adopt the facts articulated in *Cooney v. Park County*, 792 P.2d 1287 (Wyo.1990), *cert. denied and judgment vacated sub nom., Cooney v. White*, — U.S. —, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991), *on remand, Park County, White and Mayor v. Cooney*, 845 P.2d 346 (Wyo.1992), and then to quote

---

**21.** We recognize and anticipate a judicial economy argument that, since essentially the same alleged facts exist in *Mayor* as here, perhaps we should determine whether or not the prosecutor is entitled to qualified immunity. However, because we were not actually asked to make a qualified immunity determination in *Cooney I* and because the parties have not had an opportunity to present their case to the district court, we elect to remand. *See Burns*, 958 F.2d 374 (Seventh Circuit disposition following the Unit-

ed States Supreme Court's partial reversal and remand in *Burns*, — U.S. —, 111 S.Ct. 1934).

Just as the United States Supreme Court did in reversing the "legal advice" issue in *Burns*, — U.S. at —, 111 S.Ct. at 1945 n. 9, we also decline to express any views as to the underlying merits of the remaining portions of the Cooneys' § 1983 action against the prosecutor and his corresponding arguments for qualified immunity to those claims.

from the factual version found in the dissenting opinion in the first case. I am further troubled by the statement that the case is being reexamined without predisposition toward a particular result. It is clear to me that the dissents in the earlier case manifest ample evidence of a predisposition toward a particular result.

Perhaps the best way to characterize this decision is that it is a capital example of the adage that bad cases make bad law. No one can justify what occurred with respect to Thomas Russell Cooney. A supreme court, however, must avoid permitting its policy decisions to be driven by emotional reaction. A sense of outrage is not the appropriate premise from which to articulate policy.

The majority seriously misstates the factual circumstances in this instance by assuming that the deputy county attorney was furnishing advice prior to the initiation of a judicial proceeding. The fact is that the case is the same one in which the conviction occurred, and the jurisdiction of the court continues during the probationary period. This is entirely different from the factual circumstances in *Burns v. Reed*, —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), *on remand*, 958 F.2d 374 (7th Cir.1992); in which the prosecuting attorney was furnishing advice to police officers prior to the initiation of any judicial proceeding. It appears that the majority chooses to misunderstand the reach of *Burns*.

This case fits within Wyo.Stat. § 7–13–305 (1987), which provides:

(a) The period of probation or suspension of sentence under W.S. 7–13–302 shall be determined by the court and may be continued or extended.

(b) Upon the satisfactory fulfillment of the conditions of suspension of sentence or probation under W.S. 7–13–302 the court shall enter an order discharging the defendant.

(c) For a violation of a condition of probation occurring during the probationary period, revocation proceedings may be commenced at any time during the period of suspension of sentence or probation under W.S. 7–13–302, or within thirty (30) days thereafter, in which case the court may issue a warrant and cause the defendant to be arrested. If after hearing the court determines that the defendant violated any of the terms of probation or suspension of sentence, the court may proceed to deal with the case as if no suspension of sentence or probation had been ordered.

(d) The time for commencing revocation proceedings shall be automatically extended for any period of time in which the probationer is incarcerated outside this state during the probationary period for the conviction of an offense which is a violation of the conditions of probation, unless the probationer has made a valid request for final disposition under the interstate agreement on detainers, W.S. 7–15–101 through 7–15–106 [§§ 7–15–101 through 7–15–105].

This statute clearly contemplates a judicial function. In advising the court, the probation officer was proceeding in accordance with statute. Wyo.Stat. § 7–13–408(a). When that notification was furnished to the deputy county attorney, an officer of the court, his request necessarily was a judicial function.

I agree with the carefully reasoned opinion of the court in the first instance, and with Justice Golden's views in his now dissenting opinion which I find correctly apply the functional analysis. There can be no question that the revocation of probation is a judicial function and, still, there is no question that the deputy county attorney's participation in the revocation proceedings was "the functional equivalent of the prosecutor's role as an advocate in a criminal proceeding." *Cooney*, 792 P.2d at 1295. While hindsight is indeed helpful, it does serve to blind us to the possibility that, at the time of these events, the second set of circumstances communicated to the prosecutor may have been the incorrect one. He had received two versions from the probation and parole officers, with an assertion that one was correct and one was not. The best way to resolve that was to let the court, not the prosecuting attorney, decide.

Unfortunately, we have not really established a policy rule in this case because I note that one justice concurs only in the result. I fear, however, that, rather than appropriately applying the policy that justifies the functional analysis, we have made the functional analysis an *ad hoc* determination in every case. If that is to be an *ad hoc* determination in each case, then the judicial function is denied the freedom from litigation that the functional analysis depends upon in justifying immunity. Protecting the enforcement of criminal law from litigation is the basic policy justification for the functional analysis. In Wyoming, to my judgment, that protection of the prosecutor is forever lost because there will have to be litigation in each instance to determine whether the prosecutor is, or is not, engaged in a judicial function whenever there is dialogue with the executive department. That result is unfortunate.

GOLDEN, Justice, dissenting.

This case is on remand from the United States Supreme Court for further consideration in light of *Burns v. Reed*, 500 U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). In the prior *Cooney* opinion we held that all of a deputy county attorney's activities entitled him to absolute immunity in the probationer's civil rights action against him. We found that procuring a perjured probation revocation petition, assisting the Wyoming Department of Probation and Parole and its probation officer, using the perjured probation revocation petition to obtain a bench warrant for the probationer's arrest and causing the probationer to be arrested and detained in jail for thirty-eight days were the functional equivalent of the prosecutor's role as an advocate in a criminal proceeding. *Cooney v. Park County*, 792 P.2d 1287 (Wyo.1990), *vacated and remanded sub. nom. Cooney v. White*, 500 U.S. ——, 111 S.Ct. 2820, 115 L.Ed.2d 965 (1991). In reaching our decision we relied on *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); and our own *Blake v. Rupe*, 651 P.2d 1096 (Wyo.1982), *cert. denied*, 459 U.S. 1208, 103 S.Ct. 1199, 75 L.Ed.2d 442 (1983). In *Blake* this court applied *Imbler*

and numerous federal court decisions decided in the intervening years. Thus, we held that the deputy county attorney's challenged activities involved in the attempted revocation of the probationer's probation were "intimately associated with the judicial phase of the criminal process and [were] functions to which the reasons for absolute immunity apply with full force." *Cooney*, 792 P.2d at 1298.

After due consideration of supplemental briefs filed by the parties, I have concluded that *Burns* does not dictate a contrary result. I would reaffirm this court's prior decision in all respects.

This court's reconsideration of *Cooney* proceeds on the assumption that the United States Supreme Court's order vacating and remanding this case should not be read as implying that *Burns* necessarily mandates reversal. We understand "in this type of remand that the Court has merely 'flagged' this case as one upon which the intervening decision may have some bearing, but which the Court has not conclusively determined to be materially affected thereby." *Bush v. Lucas*, 647 F.2d 573, 575 (5th Cir.1981), *cert. granted*, 458 U.S. 1104, 102 S.Ct. 3481, 73 L.Ed.2d 1365 (1982), *aff'd*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983); *see also* A. Hellman, *Granted, Vacated, and Remanded*, 67 Judicature 389, 395 (1984); and Robert L. Stern, Eugene Gressman and Stephen M. Shapiro, *Supreme Court Practice* 279–80 (6th ed. 1986).

The facts of the case are adequately set out in *Cooney*, 792 P.2d 1287, and will not be repeated here. Nothing in *Burns* affects or casts doubt upon that part of our decision in *Cooney* in which we affirmed the trial court's dismissal of the Cooneys' claims alleging liability under the Wyoming Governmental Claims Act, Wyo.Stat. § 1–39–101 through 108 (Cum.Supp.1985) against the State of Wyoming, the Wyoming Department of Probation and Parole, and Robert Mayor, because no waiver of immunity under the Claims Act to those parties could be found. *Burns* only requires that we focus on the level of immunity, absolute or qualified, to which the deputy county attorney is entitled under

the circumstances pleaded in the Cooneys' civil rights complaint.

*Burns* is distinguishable from *Cooney.* In *Burns,* the police were investigating the shooting and wounding of Mrs. Burns' two sons while they slept in her house. Despite Mrs. Burns' repeated denials, passing a polygraph examination and a voice stress test, and submission of exculpatory handwriting samples, the police viewed her as a primary suspect. Conjecturing that she had multiple personalities, one of which did the shooting, the police wanted to place her under hypnosis and interview her. Concerned that this might be a legally unacceptable investigative technique, the police sought and obtained deputy prosecutor Reed's advice to proceed with an interview under hypnosis. Under hypnosis, Mrs. Burns referred to the shooter and herself by the same name, "Katie," which the police believed supported their theory. Detaining Mrs. Burns at the police station, the police again sought deputy prosecutor Reed's advice whether probable cause to arrest her existed. Based upon Mrs. Burns' statements under hypnosis, deputy prosecutor Reed told the police there existed probable cause for arrest. Acting on that advice the police arrested her. The next day, deputy prosecutor Reed and one of the investigating policemen appeared at the probable cause hearing, held by a county court judge, seeking to obtain a search warrant for Mrs. Burns' house and car. In response to deputy prosecutor Reed's questioning, the investigating policeman testified that Mrs. Burns had admitted the shooting. Neither the policeman nor the deputy prosecutor told the judge about the interview under hypnosis or Mrs. Burns' previously repeated denials. Misled, the judge issued a search warrant. The prosecutor's office charged Mrs. Burns with attempted murder. Before trial, the trial judge granted her motion to suppress the statements made under hypnosis. The prosecutor's office dismissed all charges. A few years later, Mrs. Burns filed a civil rights action under 42 U.S.C. § 1983 against deputy prosecutor Reed and others. In the trial against the deputy prosecutor, the trial court granted that official a directed verdict, holding that he was absolutely immune from liability. On appeal, the Seventh Circuit Court of Appeals affirmed. The United States Supreme Court granted certiorari.

In its decision, the Supreme Court held that deputy prosecutor Reed was absolutely immune from . § 1983 liability for his conduct during his appearance as the state's lawyer in the probable cause hearing. As for his conduct in providing legal advice to the police in the investigative phase of the criminal case, however, the Supreme Court held that conduct was not so intimately associated with the judicial phase of the criminal process as to qualify for absolute immunity. According to the Supreme Court, "absolute prosecutorial immunity [is justified] only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns,* —— U.S. at ——, 111 S.Ct. at 1943.

While I can understand that deputy prosecutor Reed's giving legal advice to the police during the investigative, pre-arrest stage of the criminal process is not action "connected with the prosecutor's role in judicial proceedings," that is not the prosecutorial action of which the Cooneys complain here. Instead, they complain of deputy county attorney White's activities in the initiation and pursuit of probation revocation proceedings. In our prior opinion, we reviewed the nature and substance of the imposition, supervision and revocation of probation under Wyoming law. We explained the sentencing judge's detailed involvement in that phase of the criminal process. *Cooney,* 792 P.2d at 1293–94. We also explained the role of the prosecuting attorney to assist the sentencing judge both in the latter's consideration whether to grant probation to an offender and the latter's consideration whether to retake or reincarcerate a probationer who allegedly has violated a condition of probation. *Id.* Importantly, we observed that although "[a] probation revocation hearing is not a trial on a new criminal charge," it is "an extension of the sentencing procedure resulting from conviction of the basic charge

* * *." *Cooney*, 792 P.2d at 1294 (quoting from *Minchew v. State*, 685 P.2d 30, 31 (Wyo.1984)). Moreover, we said:

> [F]rom the granting of probation through the supervision of probation to the revocation of probation, the sentencing judge has continuing jurisdiction over the probationer during the sentencing stage of the criminal proceeding. Without a doubt, this sentencing stage is an integral part of the judicial phase of the criminal process. We emphasize and add to that said earlier: "The supervision of probation through his probation officers [and, we would add, the county attorney] is one of the most important duties performed by the trial judge." *Smith [v. State*, 598 P.2d 1389, 1391 (Wyo.1979)].

*Cooney*, 792 P.2d at 1294.

In *Cooney* it was shown that the deputy county attorney performs "vital activities of informing the sentencing judge of possible probation violations and of presenting them to the judge under the probation revocation procedures." *Cooney*, 792 P.2d at 1295. We concluded then, and I conclude now, in light of *Burns*, that deputy county attorney White's "challenged activities are advocatory and 'intimately associated with the judicial phase of the criminal process' and, therefore, 'are functions to which the reasons for absolute immunity apply with full force.'" *Imbler*, 424 U.S. at 430, 96 S.Ct. at 995, 47 L.Ed.2d at 143.

I would hold that deputy county attorney White's challenged actions are connected with the prosecutor's role in judicial proceedings; therefore, absolute prosecutorial immunity is justified for his actions.